408 So.2d 1024 (1981)
William Riley JENT, Appellant,
v.
STATE of Florida, Appellee.
No. 58744.
Supreme Court of Florida.
December 3, 1981.
Rehearing Denied February 15, 1982.
*1027 Leonard J. Holton, Dade City, and Jerry Hill, Public Defender, and David A. Davis, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
William Jent appeals his conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm both his conviction and sentence.
On July 13, 1979 four men rode on horseback through the Richloam Game Preserve in Pasco County looking for some stray cattle. Instead of the cattle, they found the badly burned body of a young woman. Six weeks later an indictment issued, charging Jent and his stepbrother Ernest Miller[1] with the premeditated murder of a woman named "Tammy."[2]
At trial three eyewitnesses presented an ugly, confused story  a drunken swimming party, the beating of the unknown woman by Jent and his stepbrother, transporting her in the trunk of a car to Miller's home where four men raped her, and placing the woman back in the car trunk and taking her to the game preserve where Jent and Miller poured gasoline on the woman and set her on fire. The medical examiner testified that the victim had been alive when ignited and that burns were the cause of death. The jury convicted Jent as charged, and the trial court sentenced him to death. This appeal followed.
Jent alleges that the trial court erred by failing to provide him with transcripts of the grand jury testimony of three eyewitnesses. Just prior to trial Jent's attorney requested access to this testimony, claiming that the three witnesses' testimony at trial would be inconsistent with what they had told the grand jury.[3] Counsel claimed that the prior testimony would provide impeachment material, to which Jent was entitled under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After hearing argument, the court found that the defense had not laid a proper predicate for disclosure of grand jury testimony under the exceptions to section 905.27, Florida Statutes (1979).[4]
There is no pretrial right to inspect grand jury testimony as an aid in preparing one's defense and holding an in camera inspection of such testimony is a matter within the trial court's discretion. Minton v. State, 113 So.2d 361 (Fla. 1959). To obtain access to grand jury testimony, a proper predicate must be laid. Mere surmise or speculation regarding possible inconsistencies in testimony is not a proper predicate. Id.
The three eyewitnesses testified at Jent's trial. Through cross-examination, defense counsel drew attention to inconsistencies between each one's trial testimony *1028 and her previously given depositions.[5] If, as defense counsel stated, he sought the grand jury testimony in order to attack these witnesses' credibility, the cross-examination obviated that need for their prior testimony. We agree that the defense failed to present a sufficient predicate and find that the trial judge did not abuse his discretion in denying the request for access to grand jury testimony.
A few days prior to Jent's trial Samantha Carver, an eyewitness, pled nolo contendere to a charge, arising from the instant homicide, of accessory after the fact. Jent sought to depose Carver, but, on advice of counsel, she invoked her fifth amendment right to remain silent. Jent then moved for a continuance and an order requiring Carver to submit to a deposition.[6] After hearing argument, the trial court denied the motion, finding that Carver still had a fifth amendment privilege, that if her testimony were personally inculpatory she could face other criminal charges,[7] and that the defense had no reasonable grounds to believe that her testimony would exculpate Jent. Jent now claims that the court erred in denying his motion for a continuance, thereby denying him effective assistance of counsel.
We find no merit to this claim. A continuance may be granted in a trial court's discretion, but only for good cause shown by the party seeking the continuance. Fla.R.Crim.P. 3.190(g)(2). The trial court's ruling will not be disturbed unless a palpable abuse of discretion is demonstrated to the reviewing court. Magill v. State, 386 So.2d 1188 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). No such showing has been made in the instant case. Additionally, Jent's counsel diligently pursued the matter, and his suffering an adverse ruling does not rise to the level of ineffective assistance of counsel.
Jent also challenges the sufficiency of the evidence to convict him of murder. He alleges that the quality of the evidence is so poor that it fails to establish his guilt beyond a reasonable doubt and asks this Court to reweigh the evidence as it did in Tibbs v. State, 337 So.2d 788 (Fla. 1976). In making this claim Jent did not have the benefit of our second Tibbs opinion in which we receded from the case on which he relies. Tibbs v. State, 397 So.2d 1120 (Fla. 1981). In the latter Tibbs we reaffirmed this Court's previous conclusion in State v. Smith, 249 So.2d 16 (Fla. 1971), that, when a jury properly performs its duty, a reviewing court should not reweigh the evidence.
The state concedes that its witnesses were not pillars of the community. Determining the credibility of witnesses, however, is within the province of the jury. It is the jury's duty to resolve factual conflicts, and, absent a clear showing of error, its findings will not be disturbed. Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1229 (1976); Spinkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). Our review of the record convinces us that the jury performed its function properly and that its verdict is supported by competent, substantial evidence.[8]
When the body was found, the victim's head was resting against a small stump, which a detective uprooted and had examined. Laboratory technicians found several hairs on the stump, some of which came from the victim and one of unknown origin. The technician who performed a microanalysis of the hairs testified at trial. During the proffer of her testimony, as well as *1029 during direct and cross-examination, she testified that the unknown hair was microscopically the same as Jent's and that it was "highly likely" that the unknown hair and the samples of Jent's hair that she had examined had come from the same source. In response to questions from both sides regarding positive identification, however, she repeatedly stated that the unknown hair could not positively be identified as having come from Jent.[9]
Defense counsel objected to testimony regarding hair analysis on the ground that such analysis is not sufficiently reliable or exact to be allowed into evidence. The state countered the objection by claiming that hair analysis is a recognized scientific procedure and that the defense's argument went to the weight to be given the testimony, not to its admissibility. The trial judge stated that the reliability of microanalysis was a determination for the court to make. After the proffer of the technician's testimony and argument by both sides, the court overruled the defense's objection and allowed the testimony into evidence.
As a general rule, the problem presented to a trial court is whether scientific tests are so unreliable and scientifically unacceptable that admission of those test results constitutes error. Coppolino v. State, 223 So.2d 68 (Fla. 2d DCA 1968), cert. denied, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 794 (1970). This Court has recognized that testimony regarding hair analysis can be admitted into evidence in a criminal trial. Peek v. State, 395 So.2d 492 (Fla. 1980). A trial court has wide discretion concerning the admissibility of evidence, and, in the absence of an abuse of discretion, a ruling regarding admissibility will not be disturbed. See Mikenas v. State, 367 So.2d 606 (Fla. 1978); Rodriguez v. State, 327 So.2d 903 (Fla. 3d DCA 1976); Coppolino v. State. We find no abuse of discretion in regards to allowing hair analysis testimony in the instant case, nor do we find the substance of that testimony out of order. The technician repeatedly stated that she could not positively identify the unknown hair as being Jent's. Determining what weight to accord this testimony was within the jury's province, and no error occurred in permitting the jury to hear this testimony.
Jent claims that the trial court erred in denying his motion to exclude cameras from the courtroom during his trial. Neither the United States Supreme Court nor this Court has found the presence of cameras in a courtroom to constitute a per se denial of due process. Chandler v. Florida, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981); In Re Petition of Post-Newsweek Stations, Florida, Inc., 370 So.2d 764 (Fla.), appeal dismissed, 444 U.S. 976, 100 S.Ct. 476, 62 L.Ed.2d 403 (1979). In order to have cameras excluded from a courtroom during trial, a defendant must show prejudice of constitutional dimensions. Compare Clark v. State, 379 So.2d 97 (Fla. 1979), cert. denied, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981), with State v. Green, 395 So.2d 532 (Fla. 1981).
Jent's only allegation regarding this claim is that the clicking of the camera distracted his attorney, thereby denying him the effective assistance of counsel. The trial judge, while expressing his dislike for the presence of cameras, stated that he could not hear any such clicking. He also stated that he would grant the motion if, at any time, he found the camera distracting. The motion was never granted, so, obviously, the court never found the camera so distracting as to necessitate its removal. We find that Jent has not shown prejudice of constitutional dimensions and that the trial judge did not abuse his discretion in refusing to grant the motion.
Jent alleges error on two points regarding the victim's identity. He first claims *1030 that the indictment did not sufficiently describe one certain person[10] and that the trial court erred in failing to grant his motion to dismiss the indictment. Jent's second point is that the state failed to prove beyond a reasonable doubt that the person allegedly beaten, raped, and burned and the person autopsied were one and the same.
We agree with the state that no error occurred regarding the victim's identity. An indictment must fulfill two requirements: the defendant must be apprised of the charges sufficiently to enable preparation of a defense, and the allegations must be specific enough to protect the defendant against being placed in jeopardy twice for the same offense. State v. Black, 385 So.2d 1372 (Fla. 1980). If the deceased's name is unknown, the indictment must give as clear a description of the person as the facts before the grand jury permit. Johnson v. State, 60 Tex.Crim. 305, 131 S.W. 1085 (1910). See Commonwealth v. Di Stasio, 294 Mass. 273, 1 N.E.2d 189 (1936). We find that the indictment sufficiently apprised Jent of the crime charged and that it called him to answer for the death of one particular person and no other.
We also find that the person described in the indictment was the person autopsied. At trial the medical examiner testified that she visited the scene and observed as police took photographs of the victim's body. She identified one of those photographs and stated that she had performed an autopsy on the person in that photograph. One of the eyewitnesses to the entire sequence of events identified one of the photographs taken at the scene as being of "Tammy," the victim. We find that the state introduced convincing, satisfactory, unequivocal proof, compatible with the nature of this case, that sufficiently identified the victim. See Raulerson v. State, 358 So.2d 826 (Fla.), cert. denied, 439 U.S. 959, 99 S.Ct. 364, 58 L.Ed.2d 352 (1978).
Following his conviction, Jent moved for a new trial, alleging, inter alia, the discovery of new and material evidence.[11] After holding a hearing concerning the newly discovered evidence, the trial court denied the motion. Jent now claims that the trial court erred in denying his motion for new trial.
The motion was predicated on affidavits[12] signed by Elmer Carroll and his girlfriend Tina Marvin, both former residents of Dade City. Carroll's affidavit stated that he witnessed the beating death of a woman named Gail Bradshaw and the subsequent burning of her body. According to the affidavit, this murder took place in the Richloam Game Preserve on July 12, 1979. Marvin's affidavit stated that Carroll related the facts of Bradshaw's death to her.
At the hearing, defense counsel contended that the body identified as "Tammy" was, in fact, that of Gail Bradshaw and that someone other than Jent caused her death. Bradshaw's father, sister, and brother testified at the hearing. Only the brother identified photographs of the body as being his sister.
Elmer Carroll and Tina Marvin also testified at the hearing. On the stand, however, they recanted the statements made in their affidavits. Carroll testified that he was not at the game preserve on July 12 and that he saw nothing violent happen to Bradshaw. When shown a photograph of the body found at the game preserve, he said that it was not Bradshaw. Marvin, when questioned by defense counsel, again stated that Carroll told her that Bradshaw had been killed. On cross-examination, however, she retracted that statement and said that Carroll *1031 had never told her that Bradshaw had been taken to the game preserve and killed. Further questioning by the state produced the following dialog:
Q Well, then why did you sign an affidavit to that effect swearing that was the truth?
A I was just doing it for Mr. Hersch [Miller's attorney].
Q Why did you do that?
A To help him out I guess.
Q Why did you think you should help him out?
A Because he said he would stand by me all the way.
* * * * * *
[Meaning] he would stand beside me and he also said that he would give me a lawyer.
Both Carroll and Marvin testified that the statements on which their affidavits were based were prompted by Miller's promises, either in person or through his sister, to Carroll and Marvin, respectively, that Miller would see that Marvin and her child were taken care of while Carroll was in jail.
After hearing all the testimony, the trial judge denied the motion for new trial. The judge stated that he did not think a jury would believe Carroll and Marvin's testimony. He stated further that he believed that a jury, if it heard their testimony, would still render the same verdict.
As this Court has previously stated:
In deciding a motion for new trial on the ground of newly discovered evidence, the trial judge must weigh both the evidence adduced at the first trial, and the evidence offered on the motion, in order to determine whether the newly discovered evidence "if introduced at the trial would probably have changed the verdict." Accordingly, the "trial judge has a wide discretion in the matter of granting or denying [motions for new trial] which we will not overthrow unless some abuse is shown." Only very rarely should the trial court's determination be disturbed.
Baker v. State, 336 So.2d 364, 370 (Fla. 1976) (citations omitted); Clark v. State, 379 So.2d 97 (Fla. 1979), cert. denied, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981). After reviewing the record, we find that this case is not one of the rare instances where the trial court's determination should be disturbed. We understand the trial judge's conclusions regarding the incredibility of Carroll and Marvin's statements and testimony and find no abuse of discretion in his ruling.
The indictment charged Jent with one count of premeditated murder. During the trial, one witness testified that the victim had been raped, and the state mentioned that fact several times during closing argument. The court gave the jury the standard instruction on first-degree murder, which includes a felony-murder charge. The court did not, however, instruct on the underlying felony of rape. Defense counsel did not object to this omission, but, rather, concurred in the proposed instructions after examining them.
In his motion for new trial Jent alleged that the court erred in failing to instruct on the underlying felony. The court, however, found Jent's reliance on State v. Jones, 377 So.2d 1163 (Fla. 1979), and Robles v. State, 188 So.2d 789 (Fla. 1966), to be misplaced. The court concluded that those cases did not control the instant situation because the evidence showed an incidental rape during the commission of a premeditated murder rather than an incidental murder during the perpetration of a rape. Relying on Frazier v. State, 107 So.2d 16 (Fla. 1958), the court found no error regarding the felony-murder instruction.
On appeal Jent again alleges error in that instruction. "Where there is sufficient evidence of premeditation, the failure to give the underlying felony instruction, where it has not been requested, is not error which mandates a reversal absent a showing of prejudice." Knight v. State, 394 So.2d 997, 1002 (Fla. 1981). In reaching this conclusion we, as did the trial court, relied on Frazier. We find that the trial court properly found the failure to instruct on the underlying felony harmless. As the trial court pointed *1032 out, the state "feebly" argued felony murder; the evidence, however, overwhelmingly shows premeditated murder. The defense did not request such an instruction, and Jent has failed to show that any prejudice resulted from the failure to instruct on the underlying felony.
At the conclusion of the sentencing hearing, the jury recommended that Jent receive the death penalty. The trial court agreed with this recommendation, finding nothing in mitigation, but finding in aggravation that the homicide was especially heinous, atrocious, and cruel and that it was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.[13] On appeal Jent claims (1) that subsection 921.141(5)(i), Florida Statutes (1979), is an unconstitutional attempt to govern practice and procedure, (2) that the new aggravating factor improperly places a burden of proof on a defendant, and (3) that the trial court improperly restricted the consideration of mitigating evidence. We find no merit to any of these claims.
In Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980), the appellant attacked section 921.141 in its entirety as an unconstitutional incursion into this Court's power over practice and procedure. We found that claim to have no merit and find no differently regarding the instant claim.
Regarding Jent's second sentencing claim, he alleges that every person convicted of premeditated murder will start the sentencing proceeding with one aggravating circumstance already established. This, Jent argues, will violate due process by forcing the defendant to prove lack of premeditation in the sentencing phase of the trial. We do not agree that this will occur. As we stated in State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), the aggravating circumstances set out in section 921.141 must be proved beyond a reasonable doubt. The level of premeditation needed to convict in the penalty phase of a first-degree murder trial does not necessarily rise to the level of premeditation in subsection (5)(i). Thus, in the sentencing hearing the state will have to prove beyond a reasonable doubt the elements of the premeditation aggravating factor  "cold, calculated ... and without any pretense of moral or legal justification."
After reviewing the record, we find that the trial court did not improperly limit consideration of mitigating evidence. Jent complains that the court did not instruct the jury on nonstatutory mitigating evidence, but he did not ask the trial court to give the instruction he now propounds to this Court. In fact, when asked by the trial court, defense counsel indicated his satisfaction with the instructions that court proposed to give.
Finding no error, we affirm both the conviction and sentence of death.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] The jury convicted Miller of first-degree murder in a separate trial. In a combined sentencing hearing both Jent and Miller received the death penalty. Miller v. State, No. 58,795 (Fla.).
[2] Several witnesses referred to the victim as "Tammy." Her name has never been established more definitely.
[3] Defense counsel stated that he was not alleging that they would commit perjury.
[4] § 905.27(1), which allows disclosure of grand jury testimony for the purpose of:

(a) Ascertaining whether it is consistent with the testimony given by the witness before the court;
(b) Determining whether the witness is guilty of perjury; or
(c) Furthering justice.
[5] Each of the three witnesses had given two depositions. Any inconsistencies do not rise to the favorable evidence level of Brady.
[6] Carver had not been adjudicated and sentenced when the court heard this motion nor had she been granted immunity.
[7] The trial court correctly concluded that accessory after the fact is not a lesser included offense of premeditated murder. See Palmes v. State, 397 So.2d 648 (Fla. 1981).
[8] We find no merit in Jent's contention that the trial court erred in not finding "weakness" of the evidence as a mitigating factor in the sentencing proceeding.
[9] "[E]xcept in rare instances, there are not enough individual characteristics in hair from which to determine positively that a hair of unknown source came from a particular person to the exclusion of all other persons." A. Moenssens & F. Inbau, Scientific Evidence in Criminal Cases 412 (1978) (footnote omitted). This Court acknowledged that conclusion in Peek v. State, 395 So.2d 492 (Fla. 1980).
[10] The indictment charged Jent with one count of premeditated murder for the death of "Tammy, a white female, 5'06" in height, and weighing approximately 120 pounds, a better description of said person to the Grand Jury unknown."
[11] New and material evidence which, if introduced at trial, would probably have changed the verdict is a ground for granting a new trial. Fla.R.Crim.P. 3.600(a)(3).
[12] We note that a state attorney was not present at the interviews which produced these affidavits and that neither Carroll nor Marvin was represented by counsel during the interviews.
[13] § 921.141(5)(i), Fla. Stat. (1979). The court commented that, on the facts of this case, these two circumstances "seem to blend into one" and appears to have considered them as only a single aggravating factor. In the absence of mitigating factors, finding only a single aggravating factor is sufficient to warrant imposition of the death penalty. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).