498 So.2d 1258 (1986)
Juan Roberto MELENDEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 66244.
Supreme Court of Florida.
December 11, 1986.
*1259 Marshall G. Slaughter, Bartow, for appellant.
Jim Smith, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
SHAW, Justice.
Appellant, Juan Roberto Melendez, was found guilty as charged of first-degree murder and armed robbery. The trial court imposed the death sentence for the murder and a life sentence for the robbery. Melendez now appeals his convictions and sentences. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and we affirm.
Police responded to a call from the victim's sister on the evening of September 13, 1983, and found the body of Delbert Baker on the floor in a back room of his beauty school in Auburndale. His throat had been slashed, and he had been shot in the head and shoulders. No jewelry was found on his body.
John Berrien testified at trial that there was an occasion around the time of September 12, 1983, on a rainy day that he, his cousin George Berrien, and appellant were together and appellant asked him to drive him to Auburndale so he could get his hair done and pick up some money. The three of them left at about 4 p.m. Appellant had a bulge in the back of his pants that John suspected was a gun. George and appellant said to pick them up from Mr. Del's, the beauty school, in about one and one-half to two hours, and he did so. The next day George asked John to drive him to the train station so that he could go to Delaware to see his children. Appellant went with them to the station and gave George two rings, a watch and a gun to sell in Wilmington. John had seen appellant with watches and rings before, but could not say if they were the same ones. The watch looked like one appellant previously had tried to sell him. Amtrak records reflecting that a Mr. G. Berrien made a reservation on September 14, 1983, to go from Lakeland to Wilmington, Delaware, and a ticket lift indicating that the train was actually boarded were introduced into evidence. There was testimony that the victim had worn his missing wrist watch, gold bracelet and four diamond rings for years and that he had been wearing them the day of the murder. A bank bag containing $50 in petty cash was missing from the victim's desk drawer.
David Falcon, a convicted felon, testified that several months after the murder appellant told him of having participated in the crimes. According to Falcon's rendition, appellant and another had made an appointment with the victim because he was supposed to have money and jewelry. The driver, John, stayed in the car. Appellant and his accomplice went inside, and the latter cut the victim's throat. The victim begged them to take him to a hospital, but appellant said that that could not be done because the victim would tell the police. Appellant then shot him in the head. The perpetrators cleaned up any fingerprints and took jewelry and money.
*1260 George Berrien testified for the defense and denied riding with appellant in the car to Auburndale and said he had seen him only once before at his cousin John's house. Appellant testified and denied culpability. A prisoner named Roger Mims testified that his cellmate, Vernon James, told him that he, his partner and a homosexual killed Baker. There was police testimony that Harold Landrum was a close friend of James's and that James and Landrum were initially suspects in the case, but that Landrum was eliminated as a suspect based on an interview with Landrum's employer.
Appellant's lover testified that Falcon had told her he was going to testify falsely against appellant. She also stated that she had been with appellant the evening of the murder, and this was corroborated by her sister's testimony. There was additional testimony that Falcon did not like appellant and said he was going to have him killed.
The jury convicted appellant of first-degree murder and armed robbery and recommended the death penalty for the murder. The trial court sentenced him to death in accordance with the jury's recommendation, finding four aggravating and no mitigating factors.
Appellant argues that he was denied due process because the police investigators failed to collect and preserve certain physical evidence that might have been beneficial to him: a blood sample from the scene, a stain on the victim's car seat, clothes or shoes of Vernon James, shoes of Harold Landrum, shoes found beside the body, David Falcon's gun, and a hunting knife found in the victim's desk drawer. This claim, relating to the opportunity to present a defense, involves "what might loosely be called the area of constitutionally guaranteed access to evidence." United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). "Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system." California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). The concern is that the accused have access to exculpatory evidence, not all possible pieces of evidence that the police have rejected as worthless. The duty on the state is "limited to evidence that might be expected to play a significant role in the suspect's defense." Id. at 488, 104 S.Ct. at 2534 (footnote omitted). The evidence must "possess an exculpatory value that was apparent before the evidence was destroyed." Id. at 489, 104 S.Ct. at 2534. There is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). Most of the alleged negligent nonpreservation of evidence in this case occurred prior to the time appellant became a suspect. We find neither evidence of a conscious effort by the police to suppress exculpatory evidence in this case nor a showing that rejected evidence possessed an apparent exculpatory value. We affirm this point relating to the collection and preservation of evidence.
Appellant next contends that the trial court erred in denying the motion for mistrial when two non-subpoenaed defense witnesses, the Reagans, refused to appear to testify. Defense counsel sought to introduce testimony of Falcon's forcing his way into the Reagans' home, threatening to kill Mr. Reagan, and shooting into the Reagan vehicle several times. Appellant argues that the Reagan testimony would have hurt Falcon's credibility and might have caused the jury to believe that he was the perpetrator. We cannot fault the trial court for refusing to declare a mistrial when non-subpoenaed witnesses failed to appear. Moreover, inasmuch as the prosecutor agreed to a stipulation as to what their testimony would be and the stipulation was read to the jury, appellant suffered no prejudice. We affirm on this point.
Appellant has not specifically challenged the sufficiency of the evidence by *1261 which he was convicted, but this is a matter we consider nonetheless. We have carefully considered the record in this case, and we have concluded that the jury's verdict is supported by competent substantial evidence. That is, a rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is not the province of this Court to reweigh conflicting testimony. Tibbs v. State, 397 So.2d 1120 (Fla. 1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Rather it is within the province of the jury to determine the credibility of witnesses and to resolve factual conflicts. Jent v. State, 408 So.2d 1024 (Fla.), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). Absent a clear showing of error, its findings will not be disturbed. Id.
Regarding the penalty phase of the trial, appellant argues that the aggravating factors found by the trial court were not proved beyond a reasonable doubt. He first challenges the factor that the defendant has previously been convicted of a felony involving the use or threat of violence to a person, section 921.141(5)(b), Florida Statutes (1983), contending that the record of conviction for a robbery that occurred ten years previously cannot support this circumstance. This argument is without merit.[1]
Appellant argues that it was error for the trial court to find that the murder was committed while the defendant was engaged in the commission of a robbery, section 921.141(5)(d), in that there was no proof of a robbery in this case. We disagree with appellant. The jury found appellant guilty of robbery, and its verdict is supported by competent substantial evidence. Jent.
Appellant contends that the murder was not "especially wicked, evil, atrocious and cruel" because the gunshot to the head would have caused instantaneous death according to the medical examiner.[2] This contention ignores the slitting of the victim's throat and his pleas for mercy and knowledge of his impending doom. Whether appellant only fired the shot and his accomplice slit the throat is immaterial. James v. State, 453 So.2d 786 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984). The heinous, atrocious and cruel factor is supported by the record in this case. Appellant also challenges the cold, calculated and premeditated factor. § 921.141(5)(i). We reject his contention that it is unsupported. Appellant requested to be driven to the victim's beauty school and to be left there for one and one-half to two hours. He went there for the purpose of getting the victim's jewelry and money, and he knew he would have to encounter the victim to take his jewelry from him. The record supports his planning this terrible crime well in advance.
Appellant also complains that the trial court read the list of aggravating circumstances to the jury without defining or illustrating the technical meaning of any of the words. Our review of this issue is foreclosed, not having been preserved at trial.
Appellant's last argument is that the jury conviction could have rested upon felony murder, so that he should not have been sentenced for both the robbery and the murder. This point is meritless, as a defendant can be convicted and sentenced for both felony murder and the underlying felony. State v. Enmund, 476 So.2d 165 (Fla. 1985). Moreover it is not error to convict and sentence for both crimes when appellant was indicted for premeditated murder, the jury was instructed on premeditated murder, and the evidence supports premeditated murder. Blanco v. State, 452 So.2d 520 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985).
*1262 Having found no reversible error at either the guilt or penalty stages of the trial and having determined that the imposition of the death sentence upon the defendant for the murder in this case is in line proportionally with other cases in which the death penalty has been imposed, as we do in affirming sentences in these cases, Williams v. State, 437 So.2d 133 (Fla.), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 164 (1984), we affirm appellant's convictions and sentences.
It is so ordered.
McDONALD, C.J., and BOYD, OVERTON and EHRLICH, JJ., concur.
BARKETT, J., concurs specially with an opinion.
ADKINS, J., concurs in the conviction, but concurs in the result only with the sentence.
BARKETT, Justice, concurring specially.
I agree with the majority that the evidence in this case which is delineated with care in the majority opinion is sufficient to support Melendez's conviction. There was competent substantial evidence upon which the jury could have found that Melendez committed this robbery-murder. See Jent v. State, 408 So.2d 1024, 1028 (1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). I do not, however, believe that the quality of that evidence is sufficient to support imposition of the death penalty.
Under our constitution, this Court hears appeals from all final judgments imposing the death penalty. Art. V, § 3(b)(1), Fla. Const. It is our duty to independently determine whether imposition of the death penalty is warranted. See § 921.141(4), Fla. Stat. (1985). See also Aldridge v. State, 351 So.2d 942, 944 n. 4 (Fla. 1977) (we have a duty to review the record in every case where the death penalty is imposed), cert. denied, 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978); Swan v. State, 322 So.2d 485, 489 (Fla. 1975) (this Court has a duty to consider record to assure death penalty is justified). The United States Supreme Court has noted that "the penalty of death is qualitatively different from a sentence of imprisonment... . [and] there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). See also Gardner v. Florida, 430 U.S. 349, 357, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (death is a different kind of punishment from any other). In light of this, I believe that our responsibility to independently review death sentences includes an evaluation of the evidence supporting guilt to determine whether a death sentence is appropriate.
While a jury verdict of guilt based on competent substantial evidence is sufficient for upholding convictions and prison sentences, I do not believe it is always enough for upholding a death sentence. There are cases, albeit not many, when a review of the evidence in the record leaves one with the fear that an execution would perhaps be terminating the life of an innocent person.
In Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), Justice Stevens wrote an opinion concurring in part and dissenting in part, which better expresses the thought:
While the crime for which petitioner was convicted was quite horrible, the case against him was rather weak, resting as it did on the largely uncorroborated testimony of a drug addict who said that petitioner had bragged to him of having killed a number of women, and had led him to the victim's body. It may well be that the jury was sufficiently convinced of petitioner's guilt to convict him, but nevertheless also sufficiently troubled by the possibility that an irrevocable mistake might be made, coupled with evidence indicating that petitioner had suffered serious head injuries when he was 20 years old which had induced a personality change, App. 35, see also [Spaziano v. State] 433 So.2d 508 at 512 [Fla. 1983] (McDonald, J., dissenting), that the jury concluded that a sentence of death *1263 could not be morally justified in this case.
Id. at 488 n. 34, 104 S.Ct. at 3178 n. 34.
Similarly, the case against Melendez rests solely on the uncorroborated testimony of a convicted felon who, according to one witness, had pledged to destroy the defendant. The jury is clearly entitled to believe the convict's testimony, and a verdict based on this evidence cannot and should not be disturbed. However, the law must provide for the situation where the quantum of proof does not foreclose doubts as to guilt. I am persuaded by Justice Marshall's view that:
[T]he "reasonable doubt" foundation of the adversary method attains neither certainty on the part of the factfinders nor infallibility, and accommodations to that failing are well established in our society. See also Jackson v. Virginia, 443 U.S. 307, 317-318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979) (reversal of jury verdict supported by insufficient evidence). In the capital sentencing context, the consideration of possible innocence as a mitigating factor is just such an essential accommodation.
Burr v. Florida, ___ U.S. ___, 106 S.Ct. 201, 203, 88 L.Ed.2d 170 (1985) (Marshall, J., dissenting from denial of certiorari).
As Justice Marshall points out in his dissent from denial of certiorari in Heiney v. Florida, 469 U.S. 920, 921-22, 105 S.Ct. 303, 303-05, 83 L.Ed.2d 237 (1984):
This Court, in Lockett [v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)], and then more decisively in Eddings [v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)], held that any aspect of the case that could rationally support mitigation must be deemed a legally valid basis for mitigation. There is certainly nothing irrational  indeed, there is nothing novel  about the idea of mitigating a death sentence because of lingering doubts as to guilt. It has often been noted that one of the most fearful aspects of the death penalty is its finality. There is simply no possibility of correcting a mistake. The horror of sending an innocent defendant to death is thus qualitatively different from the horror of falsely imprisoning that defendant. The belief that such an ultimate and final penalty is inappropriate where there are doubts as to guilt, even if they do not rise to the level necessary for acquittal, is a feeling that stems from common sense and fundamental notions of justice. As such it has been raised as a valid basis for mitigation by a variety of authorities.
The wisdom behind mitigating death sentences in the face of doubts as to guilt led the drafters of the Model Penal Code to include that factor in their model death penalty statute as a mitigating factor so strong that its presence would exclude the possibility of death as a matter of law.

Death Sentence Excluded. When a defendant is found guilty of murder, the Court shall impose sentence for a felony of the first degree [i.e., a non-capital offense] if it is satisfied that:
... .
(f) although the evidence suffices to sustain the verdict, it does not foreclose all doubt respecting the defendant's guilt. ALI, Model Penal Code § 210.6(1), p. 107 (Off.Draft, 1980).
See also Smith v. Wainwright, 741 F.2d 1248, 1255 (11th Cir.1984) (quoting Smith v. Balkcom, 660 F.2d 573, 580 (5th Cir.1981), modified, 671 F.2d 858 (1982), cert. denied, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982)) (jurors may hold a genuine, if not a reasonable, doubt of guilt), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 151 (1985).
In summary, I believe that the nature and strength of the evidence of guilt should be considered in upholding a death sentence. After careful review of the record in this case, I believe that the evidence does not rise to the level of certainty that should support imposition of the death penalty.
NOTES
[1] Just as the robbery supports this aggravating factor, it also negates the existence of the mitigating factor of lack of significant history of criminal activity. § 921.141(6)(a).
[2] The issue was not raised below or on this appeal, but we note that the trial court's instruction on the § 921.141(5)(h) factor substituted "wicked, evil" for "heinous." We find no reversible error.