612 So.2d 1366 (1992)
Juan Roberto MELENDEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 75081.
Supreme Court of Florida.
November 12, 1992.
Rehearing Denied February 17, 1993.
*1367 Larry Helm Spalding, Capital Collateral Representative; Gail E. Anderson, Asst. CCR and Harun Shabazz, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
The appellant, Juan Roberto Melendez, was convicted of first-degree murder and armed robbery for which he received a death sentence and a life sentence respectively. This Court affirmed both the convictions and sentences. Melendez v. State, 498 So.2d 1258 (Fla. 1986). Melendez appeals the summary denial of his motion for postconviction relief filed pursuant to rule 3.850, Florida Rules of Criminal Procedure. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
Melendez raises eleven issues in his motion for postconviction relief. Issues 6, 8, and 10 do not involve ineffective assistance of counsel or call into question the fundamental fairness of the trial. These issues relate to alleged errors which even if meritorious must be raised on direct appeal if they are to be raised at all. Blanco v. Wainwright, 507 So.2d 1377 (Fla. 1987). We find these issues to be procedurally barred and decline to further address the claims.[1]
Issues (1) and (2) assert violations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Melendez argues that the State withheld background information relative to State's witness David Luna Falcon and failed to correct falsehoods in the testimony of Detective Glisson regarding Falcon's background. The record does not support such a claim. Trial counsel cross-examined Falcon relative to his prior record, his drug use, his cooperation with law enforcement authorities, and his payment for furnishing information to the police. Detective Glisson testified for the defense and corroborated the fact that Falcon had worked as a drug informant. Defense witnesses testified *1368 relative to Falcon's reasons for testifying against Melendez and his close relationship with Detective Glisson. Additional details regarding Falcon's prior criminal record, his location at the time of the offense, and his history of mental illness and drug addiction was either known by defense counsel or was as accessible to the defense as it was to the State. In order to prove a Brady violation, a defendant must show:
(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Hegwood v. State, 575 So.2d 170, 172 (Fla. 1991) (quoting United States v. Meros, 866 F.2d 1304, 1308 (11th Cir.) cert. denied, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989) (citations omitted)). It is clear from the record that Melendez's claim does not meet this standard of proof.
Issues (3) and (4) argue trial counsel's ineffectiveness during both the guilt and penalty phase in that counsel failed to investigate and prepare for cross-examination of key State witnesses, failed to subpoena defense witnesses, failed to present the complete testimony of defense witnesses, failed to present available mitigating evidence, failed to properly argue disparate treatment of Melendez's accomplice, failed to advise Melendez of the consequences of not presenting mitigating circumstances, and failed to secure mental health experts.
The record does not support appellant's claim. Counsel impeached John Berrien's testimony by revealing that he was a convicted felon, had falsified information on his workers' compensation insurance, and had his first-degree murder charge in this case reduced to accessory-after-the-fact. We have no reason to believe that the decision to forego further cross-examination was not a tactical decision. In addition to impeaching Falcon's testimony relative to his criminal record and his work as a paid informant, counsel presented eight witnesses to refute Falcon's testimony. When the Reagans failed to appear as defense witnesses, trial counsel was able to get their testimony before the jury by way of stipulation and presented Melendez's girlfriend and mother as alibi witnesses. We do not find counsel's performance during the guilt phase outside the wide range of professional competent assistance guaranteed under the Sixth Amendment of the U.S. Constitution. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
In assessing counsel's performance during the penalty stage, it must be viewed in light of Melendez's statement that he wanted the death penalty because it would allow him to receive a speedy trial and more publicity to prove his innocence and that he would rather take that gamble than go to prison for a long time for something he didn't do. He informed the court that he did not want to present mitigating evidence and that he would rather receive the death sentence than a life sentence. In spite of Melendez's attempted rush to judgment, his lawyer argued and the trial judge instructed that the jury could consider in mitigation: (1) whether Melendez had a significant prior criminal history; (2) whether he was an accomplice to the crime which was committed by another person and that his participation was relatively minor; (3) his age at the time of the crime; (4) any other aspect of his character or circumstances of the offense. We find nothing in the record calling Melendez's sanity or mental health into question or alerting counsel or the court of the need for a mental health evaluation; accordingly, we do not find that counsel was ineffective in failing to investigate further and present additional evidence.
Issue (5) alleges that Melendez's death sentence is disproportionate and in disparity with the treatment of his alleged accomplice, George Berrien, who was never charged in this crime. Melendez's argument on this point is misplaced. Proportionality is used to compare a death sentence to other cases approving or disapproving a sentence of death. Arguments *1369 relating to proportionality and disparate treatment are not appropriate here where the prosecutor has not charged the alleged accomplice with a capital offense. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Palmes v. Wainwright, 460 So.2d 362 (Fla. 1984).
During the penalty phase, the jury was given the following instruction:
The aggravating circumstances that you may consider are limited to any of the following that are established by the evidence:
... .
And three, the crime for which the defendant is to be sentenced was especially wicked, evil, atrocious or cruel.
Melendez claims as issue (7) that this instruction "provided for no genuine narrowing of the class of people eligible for the death penalty, because the terms were not defined in any fashion." This claim, however, was already addressed on direct appeal, wherein we stated:
Appellant also complains that the trial court read the list of aggravating circumstances to the jury without defining or illustrating the technical meaning of any of the words. Our review of this issue is foreclosed, not having been preserved at trial.
Melendez, 498 So.2d at 1261. The issue is thus procedurally barred.
We note that although a similar instruction on this aggravating circumstance was recently ruled invalid by the United States Supreme Court in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), this Court's finding on direct appeal in the present case that the matter was not preserved is dispositive. See Sochor v. Florida, ___ U.S. ___, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992) (claim of unconstitutional vagueness of "heinous, atrocious, or cruel" instruction will not be heard by United States Supreme Court where Florida Supreme Court finds it unpreserved). Even if it had been preserved, we find the error harmless beyond a reasonable doubt since there is no reasonable possibility that the erroneous instruction contributed to the jury recommendation. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
In issue (9), Melendez asserts that the jurors were misled by instructions and arguments which diluted their sense of responsibility in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). This argument is without merit because Caldwell does not control Florida law on capital sentencing. We find that the instructions as given adequately advised the jury of its responsibility and that the prosecutor's comments were not improper. Provenzano v. Dugger, 561 So.2d 541 (Fla. 1990); Combs v. State, 525 So.2d 853 (Fla. 1988).
Issue (11) alleges that counsel was ineffective for failing to argue that the death sentence rests upon an unconstitutional automatic aggravating circumstance (committed in the course of a felony) in violation of Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). We have repeatedly rejected this argument on the merits. Squires v. State, 450 So.2d 208, 212 (Fla.), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). Counsel cannot be deemed ineffective for failing to make this meritless argument.
The denial of the motion for postconviction relief is affirmed.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs in result only.
NOTES
[1] Issue 6 is whether the trial court failed to provide a factual basis in support of the death penalty. Issue 8 relates to the aggravating circumstance of "cold, calculated, and premeditated." Issue 10 is whether the jury instructions unconstitutionally shifted to Melendez the burden of proving that a life sentence was warranted.