718 So.2d 746 (1998)
Juan Roberto MELENDEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 88961.
Supreme Court of Florida.
June 11, 1998.
Rehearing Denied September 15, 1998.
Gregory C. Smith, Capital Collateral Counsel, Northern Region, Tallahassee, and Gail E. Anderson, Special Assistant CCRC, Greensboro, for Appellant.
*747 Robert A. Butterworth, Attorney General, and Candance M. Sabella, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Juan Roberto Melendez appeals an order of the trial court denying relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
The facts of this case are set out fully in our opinion on direct appeal. See Melendez v. State, 498 So.2d 1258 (Fla.1986). Juan Roberto Melendez was convicted of the first-degree murder and armed robbery of Delbert Baker and was sentenced to death. We affirmed. Id. The trial court summarily denied Melendez's first motion for post-conviction relief in July 1989, and we affirmed. Melendez v. State, 612 So.2d 1366 (Fla.1992), cert. denied, 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993). We denied his subsequent petition for a writ of habeas corpus. Melendez v. Singletary, 644 So.2d 983 (Fla. 1994). Melendez filed the present motion for post-conviction relief in September 1994, seeking to present newly discovered evidence that another man, Vernon James, was the killer. The trial court held an evidentiary hearing in May 1996, wherein Melendez called five witnesses.[1]
The court found that the testimony of these witnesses, "either individually or cumulatively, falls short of the standard required to grant a retrial," and denied Melendez's rule 3.850 motion. Melendez appeals that denial, raising four issues.[2]
Melendez first claims that newly discovered evidence establishes his innocence and the trial court erred in denying him relief. We disagree. This Court set forth the relevant standards in Blanco v. State, 702 So.2d 1250 (Fla.1997):
First, to qualify as newly discovered evidence, "the asserted facts must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence." Second, to prompt a new trial, "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial."
In reviewing a trial court's application of the above law to a rule 3.850 motion following an evidentiary hearing, this Court applies the following standard of review: As long as the trial court's findings are supported by competent substantial evidence, "this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses *748 as well as the weight to be given to the evidence by the trial court."
Id. at 1251 (footnotes omitted) (quoting Jones v. State, 591 So.2d 911, 915, 916 (Fla.1991), and Demps v. State, 462 So.2d 1074, 1075 (Fla.1984)). In the present case, the trial court addressed this claim at length and concluded:
In support of the newly discovered evidence claim the defendant called five witnesses: Deborah Ciotti, Janice Dawson, Sandra Kay James, John Berrien and Dwight Wells. They all claimed that Vernon James had made incriminating statements to them about the murder. Four of the five were not credible witnesses and their testimony, either individually or cumulatively, falls short of the standard required to grant a retrial.
....
In summary, the newly discovered evidence claim rests on the testimony of three convicted felons who say Vernon James made incriminating statements about the murder, the partial recanting of a co-defendant's testimony, and a lawyer's vague memories of Vernon James' several confessions. The original defense was that Vernon James did it. The jury rejected that defense and none of the above would likely have been credible enough to change that verdict in my opinion.
The record shows that the trial court properly applied the law, and its findings are supported by competent substantial evidence. Consequently, this Court is precluded from substituting its judgment for that of the trial court on this matter. See Blanco, 702 So.2d at 1252 (citing Demps v. State, 462 So.2d 1074 (Fla.1984)). We find no error.
Melendez next claims that the State withheld material exculpatory evidence and knowingly presented false testimony in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We disagree. In order to establish a Brady violation, a defendant must prove the following:
(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Hegwood v. State, 575 So.2d 170, 172 (Fla. 1991) (quoting United States v. Meros, 866 F.2d 1304, 1308 (11th Cir.1989)).
In the present case, the trial court addressed this claim at length and concluded:
The major problem with this so-called Brady violation is that in order to sustain it one has to believe [defense witness] John Berrien. I do not believe John Berrien. Berrien had at least three interviews with law enforcement regarding this murder. The first occurred on March 7, 1984 at the Lakeland Police Department. The interview was conducted by Florida Department of Law Enforcement Agent Tom Roper. Glisson and Knapp were there as was a Lakeland Police detective. The second occurred March 15, 1984 at the Auburndale Police Department. Presumably, this is the interview Berrien complains of in his affidavit and testimony. He was arrested after this interview and taken to the Polk County Jail. Two days later Berrien called Det. Glisson and asked him to come to the jail because Berrien had more to say. Glisson, and eventually Roper, took a third confession at the jail. While the three statements differ in detail, they are basically the same. It is difficult to understand how Berrien's allegedly coerced statement on March 15th vitiates the statement he made on March 7th. Moreover, the police obtained the March 17th statement at the behest of Berrien himself. It seems unlikely that Berrien would summon his tormentors from Auburndale only to subject himself to further threats and coercion. One may certainly question Berrien's motives for giving these statements, but there is no credible evidence of police misconduct. None of the four elements of a Brady violation were proved.
The trial court applied the right rule of law governing the withholding of evidence under *749 Brady,[3] and competent substantial evidence supports the trial court's findings. We find no error.
Melendez claims that trial counsel provided ineffective representation during the guilt phase of the trial. This claim was raised in his previous motion for postconviction relief and is procedurally barred.[4] In his final claim, Melendez argues that the trial court failed to consider the cumulative effect of newly discovered evidence, the Brady violation, and ineffective assistance of trial counsel. These claims were either meritless or procedurally barred; therefore, there was no cumulative effect to consider. We find no error. Based on the foregoing, we affirm the denial of Melendez's rule 3.850 motion.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The first witness, Deborah Ciotti, a prostitute and drug addict at the time of the murder, testified that James told her he was going to rob the beauty shop. After she read about the murder she asked James if he did it and he responded by showing her some money and drugs. He never told her he killed Baker. The second witness, Janice Dawson, lived with James after both were released from prison on unrelated crimes. She described James as a con man, a liar, and a person adept at making people believe what he wanted them to believe. Dawson testified that James told her on many occasions that he had been involved in the murder, but he never said that he killed Baker nor did he say who committed the murder. Sandra Kay James, Vernon's sister, was the third witness. She was addicted to drugs at the time of the murder and is presently serving a thirty-year prison sentence. She claims her brother told her that he set up the robbery and was present when Baker was murdered, but he did not commit the murder. The fourth witness, John Berrien, testified against Melendez at trial in exchange for a negotiated plea agreement. He now claims that the police intimidated and coerced him into testifying falsely: that he had seen Melendez with a .38 caliber pistol in the past and on the night he drove Melendez to Baker's beauty school; that Melendez had a towel when he came out of the beauty school; and that he saw Melendez give George Berrien two rings, a watch, and a gun to take to Delaware. The fifth witness, Dwight Wells, the attorney who represented Melendez's codefendant John Berrien, testified that during the time he represented Berrien, James invited him to visit his jail cell wherein he confessed to Baker's murder. James told Wells that he and Baker were homosexual lovers who had a fight about aggressive sexual advances which resulted in James killing Baker.
[2] Melendez claims error on the following points: (1) newly discovered evidence shows that Melendez is entitled to a new trial; (2) Brady violations; (3) ineffective assistance of counsel at the guilt phase; and (4) failure to consider the cumulative effect of all the newly discovered evidence.
[3] See, e.g., Hegwood, 575 So.2d at 172.
[4] See Melendez v. State, 612 So.2d 1366, 1368 (Fla.1992); see also Jones v. State, 591 So.2d 911, 913 (Fla.1991) ("A defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by filing successive motions.").