MAY, C.J.
The scales of justice are put to task in reviewing an order granting the defendant’s motion for post-conviction relief and awarding him a new trial. The State appeals the order granting the defendant a new trial and argues the court erred in granting the post-conviction relief motion based upon newly discovered evidence. We disagree and affirm.
After a grand jury refused to return an indictment for first degree murder, the State charged the defendant by information with attempted first degree murder with a firearm of the surviving victim. It was not until its third amended information that it added a second count, charging the defendant with second degree murder with a firearm of the deceased victim. The charges stemmed from a drive-by shooting in which the surviving victim was shot in the leg. The deceased victim suffered a fatal gunshot wound. The only evidence connecting the defendant to the drive-by shootings was the surviving victim’s identification of the defendant as the shooter. A jury convicted the defendant of both offenses as charged. The trial court adjudicated him guilty, and sentenced him to concurrent terms of life in prison with a twenty-five year mandatory minimum term, pursuant to the 10-20-life statute.
Two and a half years later, the defendant moved for post-conviction relief, alleging his counsel rendered ineffective assistance by failing to call two alibi witnesses. A year and a half later, the State filed its response, agreeing the motion required an evidentiary hearing. Defense counsel filed an amended motion, alleging the existence of newly discovered evidence, and an affidavit from the surviving victim, casting doubt on his identification of the defendant as the shooter.
The affidavit contained the following attestations:
I was shot in a drive-by shooting that occurred on June 18, 2001 on Spruce Avenue, at the corner of 16th Street, West Palm Beach, Florida.
I told the police that it was a person known to me [by the defendant’s name] who shot me.
I testified at his trial and identified [the defendant] as the person who shot me. After the shooting people were telling me that it was him who shot Bobby and me.
I tried to solve the murder because it was my friend, Bobby, who died.
Before I testified at the trial, the prosecutor told me it was important to stick to my story that I had told the police and identify [the defendant] by saying that I looked him in the eyes. Aj
I felt like I might get in trouble if I changed my story, because I had to raise my hand in court.
At first I really did think it was [the defendant] who did the shooting, because that’s what everybody was saying, but now I think it wasn’t him.
I think I made a mistake in saying it was him, just because I heard it from the street.
(Emphasis added).[1]
The court held an evidentiary hearing, at which the defendant, the defendant’s companion that night, two additional alibi witnesses, the chief investigator for the Public Defender’s Office, the surviving victim, the 911 caller, and a psychologist tes- *360 tiffed.[2] The trial court entered a written order, making very specific findings of fact, including:
After observing the witnesses at the evidentiary hearing, listening to their testimony, and weighing their credibility, this Court is convinced that [the surviving victim’s] statements in his affidavit that he identified [the defendant] based on what others told him rather than what he saw himself is true.... [T]he Court believes that [the surviving victim] admitted his belief that he made a mistake in his identification during a telephone call, he agreed to sign an affidavit, he asked others to prepare it since he has limited ability to read or write, the affidavit was read to him by defense counsel and thoroughly explained, and he raised his hand and swore that it was true before signing it.
[[Image here]]
... [T]he Court finds highly credible the evidence presented that [the defendant’s] burgundy Bonneville was parked and blocked in at the party ... from 6:30 or 7:[00] p.m. until well after 9:[00] p.m.... [The alibi witnesses] ... each remember the vehicle, even after all this time, because of the new sound system which [the defendant] was showing off. Each agreed that due to the number of people at the block party, all the parking nearby was full by 7 p.m., the street had become one-way due to the traffic and people, and moving the car would have garnered attention and notice.... The Court finds it highly unlikely that [the defendant] would have been in some other burgundy Bonneville doing a drive by shooting ... yet this is exactly what the Court would have to believe to reconcile [the surviving victim’s] claim at the evi-dentiary hearing that his original testimony rather than his affidavit is true.
... While [the surviving victim’s] testimony was that the shooter’s car was a burgundy Bonneville, [the 911 caller’s] testimony contradicts that claim. [The 911 caller], who was at the corner when the shooting occurred and was a friend of [the surviving victim and his brother], has consistently told everyone who asked from the beginning that the car she saw with the gunman still hanging out was a white car not a burgundy car.
... Clearly, as [the clinical psychologist] testified, studies show and exonera-tions demonstrate, witness confidence or certainty is unrelated to the accuracy of an eyewitness identification.
... Regarding [the surviving victim’s] claim that the shooter was in a burgundy Bonneville, [the clinical psychologist] questioned whether [the surviving victim] would have used the word “burgundy” to describe a color unless he heard that from someone else first. Further, [the clinical psychologist] testified that one of the several problems with eyewitness identification is what he described as “unconscious transference.” ... In this case [the surviving victim] saw [the defendant] earlier at the convenience store and, as explained by [the defendant’s companion], [the defendant’s] car was there as well.
... [The clinical psychologist’s] testimony, thus lends credibility to [the surviving victim’s] affidavit wherein he swore that he identified [the defendant] based on what others told him, including his brother Tavares.
The trial court concluded:
Clearly, [the surviving victim’s] statements in the affidavit that he did not actually see who shot him but was instead relying on hearsay in making his *361 identification would be both material and relevant to the sole issue in trial, the identity of the shooter. The statements go to the very heart of the case since [the surviving victim’s] identification was the only evidence implicating [the defendant].
... This Court has made an explicit factual finding that [the surviving victim’s] recantation was credible and that his original trial testimony and his recantation of his recantation at the 8.850 evidentiary hearing [were] not credible. The Court was there. It heard the evidence. It believes strongly in this credibility determination.
... When determining if newly discovered evidence would probably produce an acquittal, this Court has considered whether the affidavit would have been admissible, weighed if the affidavit went to the merits of the case, looked for inconsistencies in the affidavit, questioned whether this was just impeachment evidence, asked if there was evidence admitted at trial similar to the affidavit, and sought to reconcile the affidavit with other record evidence.
The answers to the questions posed in the previous paragraph all lead to one inevitable conclusion. It is clear to this Court that the newly discovered affidavit, had it been known at trial, would probably produce an acquittal.
The trial court granted the motion on that basis, but denied the motion on the basis that trial counsel’s failure to call the alibi witnesses constituted ineffective assistance of counsel. The trial court directed that the defendant be given a new trial. From this order, the State has appealed.
The State argues the trial court erred in granting the defendant’s motion for post-conviction relief based on the surviving victim’s affidavit because the affiant did not recant his trial testimony at the evi-dentiary hearing. The State further argues the affidavit alone cannot merit review where the newly discovered evidence is inadmissible hearsay. Lastly, the State argues that to grant a new trial, the trial court must be satisfied that the witness’s testimony at a re-trial will change the outcome of the original trial.
“Two requirements must be met in order for a conviction to be set aside on the basis of newly discovered evidence. First, in order to be considered newly discovered, the evidence ‘must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.’ ” Jones v. State, 709 So.2d 512, 521 (Fla.1998) (quoting Torres-Arboleda v. Dugger, 636 So.2d 1321, 1324-25 (Fla.1994)). “Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.” Id. (citing Jones v. State, 591 So.2d 911, 911, 915 (Fla.1991)).
“As long as the trial court’s findings are supported by competent substantial evidence, ‘[we] will not substitute [our] judgment for that of the trial court on ... the credibility of the witnesses[,] ... [or] the weight to be given to the evidence by the trial court.’ ” Melendez v. State, 718 So.2d 746, 747-48 (Fla.1998) (quoting Blanco v. State, 702 So.2d 1250, 1251 (Fla.1997)). Here, the trial court explicitly found that the victim’s affidavit was credible and that his testimony at the evidentia-ry hearing was not. The affidavit disclosed that the surviving victim was no longer certain it was the defendant who shot him. This constituted newly discovered evidence because it was unknown at the time of trial, and the defendant or his *362 counsel could not have known of it by the use of diligence.
Because the surviving victim’s identification was the “only evidence implicating [the defendant],” an admission that he did not actually see the shooter would be both highly material and relevant. Further, the testimony of the other witnesses corroborated the affidavit, not the surviving victim’s testimony. And the trial court explicitly found the affidavit more credible than his testimony. Along with other corroborating testimony, the court found the affidavit sufficient to weaken the case against the defendant and create reasonable doubt. Under the unique circumstances of this case, we affirm.[3]

Affirmed.

STEVENSON and GROSS, JJ., concur.

. The italicized portion was added at the request of the surviving victim, as indicated by the placement of his initials,

. Two former prosecutors and the defense attorney also testified.

. We find Wyatt v. State, 71 So.3d 86 (Fla.2011), distinguishable.