DECISION AND JOURNAL ENTRY
Appellant, John Paul Graham, appeals his conviction in the Medina County Court of Common Pleas. We affirm.
 I.
In the early morning hours of October 17, 1998, a Toyota MR2 carrying two passengers, Mr. Graham and Chris R. Haughawout, left the roadway of County Route 233, just north of the Wayne-Medina County line in Medina County, Ohio. The vehicle had been traveling at a very high rate of speed, was unable to navigate a bend in the road, left the roadway, and flipped repeatedly. Both passengers were ejected from the vehicle.
Sergeant Jeffrey D. Houston of the Wadsworth Police Department responded to the report of the single car accident, arriving at the scene of the accident at approximately 12:30 a.m. He found Mr. Graham badly injured and lying some distance from the MR2. Mr. Graham was transported to the Wadsworth-Rittman Hospital for treatment. Mr. Haughawout, however, was killed in the accident. An investigation into the accident was conducted by the Ohio State Highway Patrol. After collecting evidence at the scene and interviewing Mr. Graham, they concluded that Mr. Graham was the driver of the MR2 and that he was intoxicated with alcohol at the time of the accident.
On June 30, 1999, Mr. Graham was indicted by the Medina County Grand Jury for aggravated vehicular homicide, in violation of R.C. 2903.06, and involuntary manslaughter, in violation of R.C. 2903.04(B) with a specification under R.C. 2903.04(D)(1)(b)(i),(iii), and (v) for driving under the influence of alcohol, a previous conviction of driving under the influence of alcohol, in violation of R.C. 4511.19, and driving while his driver's license was under suspension. On January 19, 2000, Mr. Graham filed a motion in limine seeking the exclusion of the State's expert testimony on hair and fiber analysis. The motion was subsequently denied at trial. A jury trial was held, commencing on January 24, 2000 and concluding on January 26, 2000. At trial, Mr. Graham asserted that he had been the passenger rather than the driver of the MR2. To this end, he sought to limit the State's expert's testimony in regard to the hair and fiber evidence found on the driver's side of the vehicle in his motion in limine and at trial. His objections were overruled. Further, the State elicited testimony from several persons who treated Mr. Graham at the hospital who testified that he had admitted to being the driver of the MR2.
The jury returned a verdict of guilty on both counts on January 26, 2000 and found that Mr. Graham had been operating a motor vehicle while under the influence of alcohol and while his driver's license was under suspension. The State, in its brief on sentencing filed on March 24, 2000, recommended that the charge of aggravated vehicular homicide be merged into involuntary manslaughter. The trial court merged the counts accordingly. The verdict was journalized on February 1, 2000 and the trial court entered the judgment of conviction upon its journal on February 8, 2000. In the same entry, Mr. Graham was sentenced accordingly. This appeal followed.
 II.
Mr. Graham asserts two assignments of error. We will address each in turn.
 A. First Assignment of Error THE TRIAL COURT ERRED BY NOT STRIKING TESTIMONY OF A WITNESS WHO ALLEGED DEFENDANT UTTERED ADMISSIONS AGAINST INTEREST DURING MEDICAL TREATMENT, BUT WHO FAILED TO MAKE AN IN COURT IDENTIFICATION OF DEFENDANT.
 Mr. Graham asserts that the trial court erred in allowing Ms. Stucky to testify regarding statements he made to her in the emergency room after the accident. Mr. Graham avers that she failed to adequately identify him as the declarant of these statements. We disagree.
"`The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere.'" (First alteration in original.) Statev. Maurer (1984), 15 Ohio St.3d 239, 265, quoting State v. Hymore
(1967), 9 Ohio St.2d 122, 128. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. Moreover, a new trial should not be granted unless the accused was prejudiced or may have been prejudiced by the evidence improperly admitted. R.C. 2945.83(C).
Pursuant to Evid.R. 801(D)(2)(a), "[a] statement is not hearsay if * * * [t]he statement is offered against a party and is his own statement, in either his individual or a representative capacity[.]"
Ms. Stucky recited several statements that she testified were told to her by Mr. Graham when he was in the hospital emergency room after the accident. The statements were that he had been the driver of the Toyota MR2 that had flipped over, killing Mr. Haughawout. The statements made by Ms. Stucky were, accordingly, not hearsay if they were the out-of-court statements of a party-opponent. The statements were offered by the State and were allegedly made by Mr. Graham — a party-opponent. Mr. Graham challenges the statements because Ms. Stucky did not identify him in court. However, she did refer to him by name and by description, namely by describing the declarant as the person who was brought to the hospital from a motor vehicle accident with the injuries appropriate to Mr. Graham. Moreover, Charles W. Workman, also a nurse at Wadsworth-Rittman Hospital, testified that he also heard Mr. Graham make those statements. He testified that the statements had been made in Ms. Stucky's presence and identified Mr. Graham in court as the declarant. Accordingly, we cannot conclude that the trial court abused its discretion in admitting the testimony of Ms. Stucky because the declarant was sufficiently identified. Mr. Graham's first assignment of error is overruled.[1]
 B. Second Assignment of Error THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S MOTION IN LIMINE AND ALLOWING TESTIMONY FROM STATE'S CRIMINALIST ON HAIR AND FIBER SAMPLES, VIOLATING APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND, TO [sic] ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND IN ABROGATION OF EVID RULES [sic] 102 AND 702.
 Mr. Graham argues that the trial court erred in allowing testimony by the State's expert on hair and fibers because such testimony was neither based on scientific principles nor was it reliable. We disagree as to the expert's testimony concerning analysis of fibers and find any error regarding the admission of the expert's testimony concerning hair to be harmless beyond a reasonable doubt.
As we noted above, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
When a court is asked to admit scientific evidence through an expert witness, the witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
Evid.R. 702. In evaluating the reliability of scientific evidence, the trial court must consider four factors:
 (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance.
 State v. Nemeth (1998), 82 Ohio St.3d 202, 211.
Mr. Graham does not challenge Jeffery Turnau's, the State's expert witness on hair and fibers, qualification as an expert, but rather, challenges the reliability of the scientific analysis upon which he based his testimony. Specifically, Mr. Graham challenges the reliability of Mr. Turnau's testimony in regard to fiber and hair comparison. We will address the reliability of Mr. Turnau's testimony concerning fiber comparisons first and then his testimony concerning the comparison of hair samples.[2]
Mr. Turnau's testimony regarding fibers did not involve the comparison of fibers. He simply explained that he had found red fibers on the vehicle's driver's side and blue fibers on the vehicle's passenger's side. This information, at least as to the red fibers, was also readily apparent from photographs submitted to the jury and was not based on a scientific test or experiment. He further testified to the condition of the fibers, which he collected. Specifically, he testified that the red fibers were intertwined with and fused with some of the car's upholstery, indicating extreme heat and friction at the time of their deposition. Accordingly, as he was trained in the collection and detection of fiber evidence, we conclude that the trial court did not abuse its discretion in allowing his testimony on this issue.
The hair samples present different issues. Recently, the Ohio Supreme Court adopted the test enunciated in Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 593-94, 125 L.Ed.2d 469,482-83 for determining reliability of scientific evidence. Previously, reliability was not considered in determining admissibility, rather it went to the weight of the evidence. Nemeth, 83 Ohio St.3d at 210. The previous standard of admissibility was whether a given technique had been accepted by the scientific community. Id. Mr. Graham challenges the reliability of the microscopic hair comparisons done by Mr. Turnau and avers that, as this procedure lacks reliability, the trial court should not have allowed Mr. Turnau to testify regarding the comparisons he made. Accordingly, we must determine whether the comparison of the characteristics of human hair under a microscope is reliable enough for expert testimony to be admitted regarding the results.
Many courts have found microscopic comparison of hair to be reliable and have allowed experts to testify concerning the similarity of hair recovered at the crime scene to the defendant's hair. See, e.g., Jentv. State (Fla. 1981), 408 So.2d 1024, 1029; People v. Allweiss (1979),48 N.Y.2d 40, 50. Several federal courts, after applying the Daubert
test, have found microscopic hair comparison to be sufficiently reliable for an expert in that field to testify "that hair samples are `consistent with' each other and `could have' come from the same source." Williamsonv. Ward (C.A.10, 1997), 110 F.3d 1508, 1520, fn. 13. Furthermore, "most courts have permitted [hair comparison] evidence where the examiner has followed standard procedures and made clear that the hair comparison can only be considered `consistent with' and does not constitute a `match.'"United States v. Schlamer (1997), 47 M.J. 670, 677.
We first note the type of analysis upon which Mr. Turnau based his opinion. Mr. Turnau compared the hairs recovered from the vehicle with the hair sample obtained from Mr. Graham under a microscope. No chemical analysis or DNA analysis was part of his testimony or investigation.
In the instant case, Mr. Turnau testified at trial, over Mr. Graham's objection, that it was "probable" that the hairs were from Mr. Graham. However, in Mr. Turnau's reports concerning his microscopic comparison of the hair found on the roof of the car above the driver's seat and Mr. Graham's hair, he stated that "the hair samples recovered from the suspect vehicle could have originated from John P. Graham" and that the hair samples are "similar." Hence, Mr. Turnau's testimony raises two separate issues: (1) whether microscopic hair comparison is reliable enough to determine if one hair sample from a crime scene is consistent with a hair sample from a given individual; and (2) whether microscopic hair comparison is reliable in matching a specific piece of hair with a specific individual, essentially establishing identity as DNA analysis and fingerprint comparison can accomplish.
We will first resolve whether the process of visual microscopic hair comparison is sufficiently reliable to determine whether a hair sample is consistent with or similar to another hair sample and then determine whether the technique is sufficiently reliable to determine whether a hair sample is from a specific individual. As discussed below, we conclude that, based on the factors enunciated by the Ohio Supreme Court in Nemeth, visual microscopic hair comparison is sufficiently reliable to determine whether the hair samples being compared are consistent with each other. Upon review of the applicable case law and journal articles, we find that visual microscopic hair comparison has been found to be a permissible basis for expert testimony in numerous cases, including cases tried in the federal courts where the Daubert criteria were utilized. See Annotation, Admissibility and Weight, in Criminal Case, of Expert or Scientific Evidence Respecting Characteristics and Identification of Human Hair (1983), 23 A.L.R.4th 1199. It is apparent that this procedure has gained general acceptance. Further, visual microscopic hair analysis has been the subject of numerous studies, has been subjected to peer review, and various error rates have been detected by experiment, mathematically calculated, and published. See Smith 
Goodman, Forensic Hair Comparison Analysis: Nineteenth Century Science or Twentieth Century Snake Oil? (1996), 27 Colum. Hum. Rts. L. Rev. 227 (referencing numerous cases and studies on this topic). Accordingly, we conclude that hair comparison analysis by visual inspection conducted under a microscope is sufficiently reliable for an expert to base testimony that a hair sample is consistent with the hair sample provided by the accused. Therefore, the trial court did not abuse its discretion by allowing Mr. Turnau to testify that Mr. Graham's hair was similar to or consistent with the hair recovered from the roof of the MR2.
We must next determine whether microscopic hair comparison analysis is sufficiently reliable to determine whether a specific hair sample came from a specific individual, to the exclusion of others. In the instant case, over Mr. Graham's objection, Mr. Turnau testified that "it is probable that the hairs on the driver's side came from John P. Graham." Upon review of the studies on this point and the applicable case law, we conclude that visual microscopic hair comparison analysis is not sufficiently reliable for an expert to determine to a reasonable degree of scientific certainty or probability that the hair from the vehicle was a match with Mr. Graham's hair, or probably was Mr. Graham's hair. It is apparent that such analysis has not been generally accepted for that purpose and that the error rate for such a specific finding is unreasonably high. See id. By way of distinguishing our conclusion here from our conclusion regarding the previous issue, we note that courts generally find expert testimony "to a reasonable degree of scientific certainty [that an] accused's hair was consistent with [a] hair sample taken from [the crime scene]" to be admissible, while testimony that the hair constituted a match with the accused is generally found to be inadmissible due to unreliability. State v. Millisor (Aug. 4, 1999), Marion App. No. 9-98-69, unreported, 1999 Ohio App. LEXIS 3542, at *13; see, also, Williamson, 110 F.3d at 1520, fn. 13. Accordingly, we conclude that microscopic hair comparison is reliable enough to serve as the basis for expert testimony and that, although such comparison may not be reliable enough for an expert to state with certainty the identity of the person who was the source of the hair, such a comparison is reliable enough for an expert to conclude, to a reasonable degree of scientific certainty, that the hair is like, similar, or consistent with, the hair sample provided for comparison. Therefore, we can discern no abuse of discretion on the part of the trial court in allowing Mr. Turnau's testimony regarding the consistency of Mr. Graham's hair with the sample retrieved from the MR2, but conclude that the trial court erred when it allowed Mr. Turnau's testimony that the hair probably came from Mr. Graham.
We, however, may not reverse a conviction based upon "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[, rather such error] shall be disregarded." Crim.R. 52(A). Accordingly, "[w]here constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. On cross-examination, Mr. Graham's counsel questioned the reliability of visual microscopic hair comparison, highlighting its failings in terms of not being an absolute indicator of identity. Moreover, in Mr. Turnau's own written reports, he states his conclusions in terms of similarity and consistency rather than a conclusion as to the identity of the party who lost the hair. Furthermore, the other evidence produced at trial was overwhelming, including the color of the fibers found on the driver's side of the vehicle, the fact that the hair found on the driver's side of the vehicle was consistent with that of Mr. Graham, and not consistent with that of Mr. Haughawout, and Mr. Graham's statement to the medical personnel treating him shortly after the accident that he was the driver of the vehicle. Accordingly, assuming arguendo, that this error rises to the level of constitutional error, we find any error to be harmless beyond a reasonable doubt.[3] Mr. Graham's second assignment of error is overruled.
 III.
Mr. Graham's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
 —
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
BAIRD, J., CARR, J., CONCUR
[1] Mr. Graham also asserts that he was denied due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and R.C. 2901.05. However, although Mr. Graham asserts that the trial court erred in allowing the evidence because the State must prove each element of the crime beyond a reasonable doubt, we find no authority, nor has appellant cited authority, to support the assertion that a witness must identify the party-opponent as the declarant beyond a reasonable doubt, as this standard goes to the elements of the crime rather than the admissibility of evidence. As noted in the body of this opinion, the admissibility of evidence rests within the sound discretion of the trial court and absent a finding by this court that the trial court abused that discretion, the trial court's decision will not be the basis of a finding of error. Accordingly, appellant's argument in this regard is overruled.
[2] While much of Mr. Turnau's testimony was in regard to finding and identifying fingerprints and shoe impressions, he discovered neither in this case.
[3] Mr. Graham asserts that the admission of this evidence violated his right to due process of law under the Ohio and United States Constitutions.