986 So.2d 534 (2008)
Duane Eugene OWEN, Appellant,
v.
STATE of Florida, Appellee.
Duane Eugene Owen, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC06-2104, SC07-650.
Supreme Court of Florida.
May 8, 2008.
As Revised on Denial of Rehearing July 10, 2008.
*541 Bill Jennings, Capital Collateral Regional Counsel, and James L. Driscoll, Jr., Assistant CCR Counsel, Middle Region, Tampa, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Celia Terenzio and Leslie T. Campbell, Assistant Attorneys General, West Palm Beach, FL, for Appellee/Respondent.
PER CURIAM.
Owen appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the circuit court's order and deny Owen's petition.

I. FACTUAL AND PROCEDURAL HISTORY
Duane Owen was convicted of burglary, sexual battery, and first-degree murder for the 1984 murder of Karen Slattery. The facts of Slattery's murder and Owen's subsequent confession were set out in detail in Owen v. State, 560 So.2d 207 (Fla. 1990) (Owen I). On direct appeal, this Court reversed Owen's convictions and sentence and remanded for a new trial due to a violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Owen I, 560 So.2d at 211. After this Court's decision in Owen I, the United States Supreme Court issued Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), which held that police are not required to cease questioning if a suspect makes an ambiguous or equivocal request for counsel. In State v. Owen, 696 So.2d 715, 720 (Fla.1997) (Owen II), this Court found that the principles announced in Davis applied to the admissibility of confessions in Florida and held that the admissibility of Owen's confession in his retrial would be subject to the Davis rationale.
Following retrial, Owen was found guilty of first-degree murder, attempted sexual battery, and burglary. After the penalty phase, the jury recommended by a ten-to-two vote that Owen be sentenced to death. The trial judge followed the jury's recommendation and imposed a death sentence for the murder conviction, sentenced Owen to fifteen years for the attempted sexual battery, and sentenced Owen to life for the burglary. The trial judge found four aggravating circumstances,[1] three statutory *542 mitigating circumstances,[2] and sixteen nonstatutory mitigating circumstances.[3]State v. Owen, Case No.: 84-4014CF A02 (Fla. 15th Cir. Ct. sentencing order filed March 23, 1999) (Sentencing Order).
Owen appealed his murder conviction and sentence, raising seven issues on direct appeal.[4] This Court found all of Owen's claims were without merit and affirmed the convictions and sentence of death. Owen v. State, 862 So.2d 687 (Fla. 2003) (Owen III).
Owen subsequently filed a motion for postconviction relief pursuant to rule 3.851, raising eight claims, which included numerous subissues.[5] During a March 31, 2006, case management conference, the trial court granted Owen leave to amend his motion to avoid summary denial of several claims. On May 18, 2006, Owen filed his first amended motion for postconviction *543 relief. The trial court conducted an evidentiary hearing on some of Owen's claims. On September 21, 2006, the trial judge issued an order denying relief. State v. Owen, Case No. 84-4014CF A02 (Fla. 15th Cir. Ct. order filed September 22, 2006) (Postconviction Order). Owen now appeals the trial court's order, raising five claims.[6] Owen has also filed a petition for writ of habeas corpus, raising three claims.[7]

II. APPEAL FROM DENIAL OF POSTCONVICTION RELIEF

A. Claims Denied Without Evidentiary Hearing
Owen argues that the trial court erred in summarily denying several of his ineffective assistance of counsel claims and his claims based upon Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). An evidentiary hearing must be held whenever the movant makes a facially sufficient claim that requires a factual determination. Amendments to Fla. Rules of Crim. Pro. 3.851, 3.852, & 3.993, 772 So.2d 488, 491 n. 2 (Fla.2000). "Postconviction claims may be summarily denied when they are legally insufficient, should have been brought on direct appeal, or are positively refuted by the record." Connor v. State, 979 So.2d 852, 868 (Fla.2007). A court's decision whether to grant an evidentiary hearing is subject to de novo review. See State v. Coney, 845 So.2d 120, 137 (Fla.2003).

1. Motion to Suppress
Owen argues that the trial court erred in summarily denying his claim that trial counsel was ineffective for failing to sufficiently challenge on retrial the admission of Owen's statements to law enforcement officers. We find no error in the summary denial because each of Owen's proposed grounds for suppression is without merit. Allegations that counsel was ineffective for not pursuing meritless arguments are legally insufficient to state a claim for postconviction relief. See Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992) (holding counsel cannot be deemed ineffective for failing to make meritless argument).
First, Owen asserts that counsel was deficient for not arguing that Owen's confession should be suppressed because law enforcement officers lacked probable cause to arrest Owen when he was seized. The trial court did not err in summarily denying this subclaim because it is legally insufficient and procedurally barred. On direct appeal from Owen's original conviction, this Court rejected prior appellate counsel's argument that Owen's confession should have been suppressed on the basis that he was illegally seized after finding that the police had probable cause to arrest Owen. Owen I, 560 So.2d at 210. To *544 the extent that this Court authorized relitigating the admissibility of Owen's confession in Owen II, it did so only in the context of whether law enforcement officers violated Owen's right to remain silent. All other issues decided in Owen I became the law of the case. Owen's retrial counsel did not err by not rearguing the seizure issue because the finding that the police had probable cause was the law of the case.
In an attempt to avoid the effect of this Court's decision in Owen I, Owen argues that his counsel at his first trial was ineffective for failing to argue that Owen was seized on May 29, 1984, rather than on May 30, 1984, as three law enforcement officers testified during the hearing on Owen's motion to suppress. We find that the postconviction trial court properly denied this claim.
During his first direct appeal, Owen filed a supplemental pro se brief with this Court. In that brief, Owen argued that he was illegally seized when he "was stopped while walking down the sidewalk at approximately 10:30 AM on May 29th, 1984, by a Boca Raton police officer who was acting on a photograph which looked similar to the appellant." In support of his argument, Owen filed an appendix to his brief that included two "Advisement of Rights" forms. One form was signed "Dana L. Brown," Owen's alias, and dated 1:10 p.m., May 29, 1984. The other form was signed "Duane E. Owen," and dated 5:45 p.m., May 29, 1984. Thus, when this Court held that the "police had more than founded suspicion, they had probable cause" to stop and seize Owen, see Owen I, 560 So.2d at 210, this Court had before it that which is now raised as the basis of an ineffective assistance of counsel claim. Given this record, the postconviction trial court did not err in summarily denying Owen's claim. Owen's postconviction claim reargues the same legal issue, based on the same factual allegations, that was raised in his direct appeal and thus is procedurally barred. Moreover, Owen's postconviction allegations fail to state a prima facie claim of prejudice. Owen's allegation that "numerous law enforcement documents show that Mr. Owen was held in the unlawful custody of the Boca Raton Police Department, including the rights forms signed Dana Brown and Duane Owen on May 29, 1984, and an evidence log with the same date" does not undermine confidence in these proceedings because the majority of this information was presented to this Court on direct appeal.
Second, Owen asserts that counsel was deficient for not arguing that Owen's confession should be suppressed because it was obtained in violation of his Sixth Amendment[8] right to counsel. Owen argues that his right to counsel in the Slattery murder case attached at his first appearance on an unrelated burglary charge, where the facts of the homicide were used to increase his bond from $1000 to $100,000. The trial court did not err in denying this subclaim because it is legally insufficientthe asserted ground for suppression is without merit as a matter of law.[9] This Court has explained that "the Sixth Amendment right to the assistance *545 of counsel is `offense specific' and applies only to the offense or offenses with which the defendant has actually been charged, and not to any other offense he may have committed but with which he has not been charged." Ibar v. State, 938 So.2d 451, 470 (Fla.2006). The Sixth Amendment right to counsel "attaches at the earliest of the following points: formal charge, preliminary hearing, indictment, information, or arraignment." Smith v. State, 699 So.2d 629, 638 (Fla.1997). At the earliest, Owen's right to counsel in the Slattery murder attached when he was charged with that offense on June 22, 1984. As a result, his June 21, 1984, confession could not have been obtained in violation of such right.
Third, Owen asserts that counsel was deficient for not arguing that Owen's confession should be suppressed because it was made during what Owen reasonably believed to be plea negotiations. Section 90.410, Florida Statutes (1999), provided that "[e]vidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837." This Court has explained that to determine whether a statement is made in connection with plea negotiations, a court should use "a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances." Owen v. Crosby, 854 So.2d 182, 189 (Fla.2003) (quoting Stevens v. State, 419 So.2d 1058, 1062 (Fla.1982)). The trial court did not err in summarily denying this subclaim because again the asserted ground for suppression is without merit. Owen's testimony at the suppression hearing positively refutes his postconviction allegation that he had an actual subjective expectation to negotiate a plea at the time of his confession to the Slattery murder. Owen testified that while being questioned in May and June of 1984, he understood that only Assistant State Attorney Paul Moyle, not the questioning officers, had authority to determine the charges against him. Owen further testified that he had not spoken to Moyle and that to his knowledge Moyle had never offered him a plea agreement. Finally, Owen explained that the police officers never promised him that he would go to a hospital if he confessed, but rather, Owen "was hoping" that if he confessed, he would be sent to a hospital instead of prison. Counsel was not ineffective for not arguing this basis for suppression because Owen's own testimony refutes the claim that he had a reasonable, subjective belief that he was negotiating a plea at the time of his confession.[10]

*546 2. Dr. Crown's Testimony
The trial court did not err in summarily denying Owen's claim that trial counsel was ineffective for not calling Dr. Barry Crown during the guilt phase to testify about Owen's neuropsychological impairment in support of Owen's insanity defense. Dr. Crown did testify during Owen's penalty phase. He testified that neurological testing indicated that Owen suffered from organic brain damage and that due to this damage, Owen likely would have difficulty understanding long-term consequences and controlling his impulsivity. Dr. Crown explained that impairment in reasoning and judgment caused by brain damage "exacerbates" the problems caused by mental illness. Owen does not allege that Dr. Crown's guilt-phase testimony would be different than that actually presented at the penalty phase. Thus, there is no factual dispute and no need for an evidentiary hearing.
After reviewing Dr. Crown's penalty-phase testimony, we agree with the trial court's conclusion that Owen failed to show that counsel was deficient because Dr. Crown's testimony would not have been admissible during the guilt phase. We further agree that Owen has not demonstrated deficiency or prejudice because, even if admissible, Dr. Crown's testimony would actually be harmful to Owen's defense.
In keeping with the requirements of the M'Naghten rule,[11] to be relevant to an insanity defense, expert testimony must concern whether the defendant (1) was incapable of distinguishing right from wrong (2) as a result of a mental infirmity, disease, or defect. Hall v. State, 568 So.2d 882, 885 (Fla.1990). Both aspects of the insanity defense must be addressed. Expert testimony that a defendant suffered from a mental infirmity, disease, or defect without concluding that as a result the defendant could not distinguish right from wrong is irrelevant. Id. (citing Gurganus v. State, 451 So.2d 817 (Fla.1984); Kight v. State, 512 So.2d 922 (Fla.1987); Zamora v. State, 361 So.2d 776 (Fla. 3d DCA 1978)). While Dr. Crown testified that Owen suffered from a recognized mental defect or infirmity, he did not conclude that as a result Owen could not distinguish right from wrong. Dr. Crown explicitly testified that he did not form an opinion about Owen's sanity. Thus, Dr. Crown's testimony would not have been admissible during the guilt phase. Trial counsel cannot be deemed ineffective for failing to present inadmissible evidence. Pietri v. State, 885 So.2d 245, 254 (Fla.2004).
Moreover, competent, substantial evidence supports the trial court's conclusion that Dr. Crown's testimony would not have been helpful to the defense. The helpful aspects of Dr. Crown's testimony were touched upon by Dr. Faye Sultan, a psychologist who testified on behalf of Owen during the guilt phase. Dr. Sultan testified that Owen suffered from frontal lobe damage, which impacted his decision-making ability and caused "impulse control problems." The defense-friendly aspects of Dr. Crown's testimony would have been largely cumulative. See Darling v. State, 966 So.2d 366, 378 (Fla.2007) ("[T]rial counsel is not ineffective for failing to present cumulative evidence."). Furthermore, Dr. Crown's testimony was not entirely favorable for Owen. While Dr. Crown emphasized that he did not conduct the full psychological evaluation of Owen *547 that was needed to evaluate sanity, he opined that Owen's brain damage would not have prevented Owen from planning a crime and would not have substantially impaired Owen's capacity to appreciate the criminality of his conduct.

3. Brady and Giglio Claims
In addition to his ineffective assistance of counsel claims, Owen argues that the trial court erred in summarily denying his claims based on Brady and Giglio.
Owen alleged that the State violated Brady by not disclosing notes that law enforcement officers seized from Linda Burkholder, a counselor at a mental health program that Owen attended in 1983, which documented Owen's delusional thinking and other mental infirmities. To establish a Brady violation, the defendant must show (1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).
The State argued and the trial court held that Owen's Brady claim in the instant case was procedurally barred because this Court affirmed the summary denial of the "identical" claim on appeal from the denial of Owen's successive postconviction motion relating to his conviction for the murder of Georgianna Worden. See Owen v. Crosby, 854 So.2d 182, 187 (Fla.2003). While we do not agree with the trial court's reason for denying the instant Brady claim, we do find that Owen is not entitled to postconviction relief. Owen's allegations fail to state a legally sufficient claim of suppression, and the trial record refutes Owen's allegations that he was prejudiced because Burkholder's notes were material.
As for the suppression prong, Owen's allegations, taken as true, do not establish that the notes were willfully or inadvertently suppressed. As explained in Occhicone v. State, 768 So.2d 1037, 1042 (Fla.2000):
Although the "due diligence" requirement is absent from the Supreme Court's most recent formulation of the Brady test, it continues to follow that a Brady claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant.
Equally available evidence is not suppressed where "the defendant was aware of the exculpatory information." Way v. State, 760 So.2d 903, 911 (Fla.2000). See also Tompkins v. State, 872 So.2d 230, 239 (Fla.2003) (finding no suppression where defense was given illegible copy of police report because defense became aware of report and could have requested legible copy).
In the instant case, Owen alleged that the "notes were in the possession of the State because the notes were taken by law enforcement officers from Linda Burkholder" and that he "obtained the information about the notes after the Slattery retrial." However, Owen's motion did not explain how he could have been unaware of his own therapist as a source of potentially exculpatory information until after his 1999 retrial, given his allegations that he discussed his mental illness with Burkholder prior to 1984 and that she took notes during their sessions. Owen did not allege that Burkholder or her notes were made unavailable to Owen by the State's actions. To the contrary, the record reveals that Owen's 1982 arrest in Michigan and the police reports concerning burglaries in Florida in 1982 were known by Owen's counsel and the defense experts in *548 their work on the case; yet nowhere in the trial record is there any indication of a failed attempt to get testimony from Linda Burkholder or any request from the experts about wanting to know about Burkholder's treatment of Owen that went unfulfilled because the information was unavailable. Thus, Owen's conclusory allegations fail to satisfy the suppression prong.
Even if we were to find Owen's allegations of suppression to be sufficient and not refuted by the record, Owen's claim that he was prejudiced by the alleged suppression of Burkholder's notes is refuted by the record. "[T]he `ultimate test' in determining if a Brady violation occurred is whether `confidence in the outcome of the trial is undermined to the extent that there is a reasonable probability that had the information been disclosed to the defendant, the result of the proceeding would have been different.'" Way, 760 So.2d at 912 (quoting Young v. State, 739 So.2d 553, 559 (Fla.1999)). This Court follows the Supreme Court's standard for determining materiality:
[T]he materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather the question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."

Way, 760 So.2d at 913 (alteration in original) (quoting Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995))).
Owen argues that Burkholder's notes would have been relevant to both the guilt and penalty phases of his trial or would have been used as impeachment. He argues that the notes "would have showed the jury that Mr. Owen's gender identity and other mental illness symptoms were manifest before Mr. Owen was facing the death penalty, thus refuting the State's charge of recent fabrication." Reviewing the record as a whole, we conclude that Burkholder's notes would have been cumulative and thus not material.
Owen called Dr. Fred Berlin, a psychiatrist, and Dr. Faye Sultan, a psychologist, to testify about Owen's mental health during both the guilt and the penalty phases of his trial. Dr. Berlin testified that he examined records from the Veterans of Foreign Wars (VFW) home where Owen lived as a teenager and police reports from a 1982 burglary where Owen stole a woman's swimsuit. Dr. Berlin testified that he concluded that Owen was having problems with gender identity as a teenager and at the time of a burglary in 1982. Dr. Berlin testified that Owen had had false beliefs that he was a woman "since early childhood." Dr. Sultan testified that she reviewed "a very extensive set of documents" from the VFW home, including "some psychological reports that were done of him, one when he was in the seventh grade and one when he was in the tenth grade." Dr. Sultan testified that "there was some indication Mr. Owen suffered some very seriousactually attempted a suicide when he lived in the VFW home and had to be hospitalized when he was about 17 or 18 in a mental hospital." The defense also called Lieutenant Marc Woods, who investigated Owen in relation to the 1982 burglaries and assisted law enforcement officers in 1984, to testify about Owen's mental state. On cross-examination, Lieutenant Woods agreed that the 1982 Florida charges were nolle prosequied because Owen "could receive *549 mental health treatment up there [in Michigan] as well as down here." This record indicates that the defense experts had documents from the VFW home, psychological evaluations done while Owen was living at the home, reports from the hospital where he was admitted after attempting suicide at age seventeen or eighteen, and the police reports from the 1982 burglaries, and that the experts testified that they had reviewed sufficient records to conclude that Owen's mental illness went back into his childhood, well before he faced the death penalty for the murder of Karen Slattery. Given the totality of the evidence, we find no basis upon which to conclude that Linda Burkholder's notes would have put the case in such a different light as to undermine confidence in the verdict or the sentence.
Finally, the trial court did not err in summarily denying Owen's claim that the State violated Giglio and Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), by purposely creating a false impression that the State's mental health experts were independent, court-appointed experts. First, the claim is procedurally barred because Owen could have challenged these on-the-record statements on direct appeal. See, e.g., Craig v. State, 685 So.2d 1224, 1226-27 (Fla.1996). Second, Owen's allegations do not state a claim under Giglio, which requires a defendant to allege that: (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew the testimony was false; and (3) the false evidence was material. Guzman v. State, 941 So.2d 1045, 1050 (Fla.2006). The prosecutor did not present or fail to correct false testimony. Dr. Thomas Waddell and Dr. McKinley Cheshire, who testified as mental health experts during the guilt and penalty phases, and Dr. Martin Tracey, who testified as a population genetics expert during the guilt phase, were appointed by the trial court at the request of the State.

B. Ineffective Assistance of Counsel During Voir Dire

1. For-Cause and Peremptory Juror Challenges
Owen argues that the postconviction trial court erred in denying his claim that his counsel was ineffective for not challenging for cause or using a peremptory challenge to remove three jurors. The trial court did not err in denying this claim. In Carratelli v. State, 961 So.2d 312, 324 (Fla.2007), this Court held that "where a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased" to be entitled to relief. The Court explained:
A juror is competent if he or she "can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk [v. State], 446 So.2d [1038] at 1041 [(Fla. 1984)]. Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartiali.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record.
Id. (citation omitted). The precise issue raised in Carratelli was trial counsel's failure to preserve for appeal the trial court's denial of a challenge for cause. However, this Court agreed with the Fourth District that failing to preserve the denial of a challenge for cause is tantamount to failing to make a challenge for cause. Id. at 316. Thus, counsel's failure to exercise a cause challenge or a peremptory challenge *550 against a juror is likewise subject to the postconviction standard set forth in Carratelli. Owen is not entitled to relief because he did not demonstrate that an actually biased juror served on his jury.
Owen argues that trial counsel should have removed juror Knowles, who had recently been the victim of a home invasion where her daughter was raped, because that crime was similar to the crime at issue in Owen's trial. This argument is without merit. Knowles' responses during voir dire indicated that she would be able to "lay aside any bias or prejudice and render [her] verdict solely upon the evidence presented and the instructions on the law given to [her] by the court." Lusk, 446 So.2d at 1041. Based upon the totality of Knowles' responses in her voir dire, Owen has not shown her to be actually biased.
Next, Owen argues that trial counsel should have removed two jurors, jurors Matousek and Griffin, because those jurors indicated a personal belief that the death penalty should be automatically imposed under certain circumstances. This argument is without merit. The record demonstrates that despite her personal viewpoint, juror Matousek stated a willingness and ability to lay aside her possible bias and follow the trial court's instructions. Juror Matousek never equivocated as to whether she could follow the law, and accordingly, Owen has not shown her to be actually biased. Juror Griffin's responses during voir dire created some doubt as to whether she could lay aside her belief and apply the law in the circumstance of multiple victims. However, as set forth in Carratelli, while the standard for obtaining a reversal upon the erroneous denial of a cause challenge on direct appeal is relatively lenient, consideration of a postconviction claim must be more restrictive. 961 So.2d at 320. To be entitled to postconviction relief, Owen must demonstrate that juror Griffin was actually biased, not merely that there was doubt about her impartiality. While Griffin answered that she "[p]robably" would vote for the death penalty in the circumstance of multiple victims and gave confusing answers regarding how she would consider mitigating evidence, she ultimately stated that she would consider mental health testimony and that such testimony could influence her toward a life sentence. No "evidence of bias" is "plain on the face of the record." Id. at 324.[12] Thus, Owen did not demonstrate that juror Griffin was actually biased.

2. Comment Regarding Mitigating Factors
Owen argues that the trial court erred in denying his claim that trial counsel was ineffective for failing to object to *551 the trial court's statements to two jurors that the mitigating circumstances would be "spelled out" or "defined." The postconviction trial court found Owen's claim to be without merit because the trial court properly instructed the jury regarding mitigating factors and "the record dispels any notion that trial counsel in some way left this jury with no guidance, instruction, or definition of what nonstatutory mitigating evidence was present and should be considered." Postconviction Order at 19. We agree. Owen has not demonstrated prejudice because the jury was properly instructed on the topic of mitigation. See Belcher v. State, 851 So.2d 678, 684-85 (Fla.2003) (holding trial court did not abuse its discretion by giving "catch-all" jury instruction about nonstatutory mitigation instead of Belcher's list of nonstatutory mitigating factors). The "catch-all" instruction in Belcher was almost identical to Florida Standard Criminal Jury Instruction 7.11, which was given in Owen. Moreover, trial counsel was not deficient for failing to object to the comments because the comments were not improper. See Darling, 966 So.2d at 383 (holding counsel was not ineffective for failing to raise a meritless objection). The trial judge did not tell jurors that he, the trial judge, would be defining the mitigating factors, only that they would be explained. Counsel knew that she would have the opportunity to explain the mitigating factors during penalty-phase closing argument, and she did detail the statutory mitigating factors and the proposed nonstatutory mitigating factors at that time.

3. Remaining Voir Dire Claims
In his remaining ineffective assistance of counsel claims arising during voir dire, Owen argues that counsel was deficient for not objecting to a statement by the prosecutor about when the insanity defense can be raised and for not making a motion to strike the entire panel after the prosecutor asked a question that revealed to the panel that Owen was imprisoned. In both claims, Owen fails to allege that he was prejudiced by his trial counsel's omission. Thus, Owen is not entitled to relief.[13]

C. Ineffective Assistance of Counsel During Penalty Phase
Owen argues that the trial court erred in denying his claim that trial counsel was ineffective during the penalty phase. We agree that each of Owen's specific ineffective assistance of counsel arguments is without merit.

1. Substance Abuse as Additional Mitigation
Owen argues that trial counsel was ineffective for not investigating Owen's history of drug and alcohol abuse because had counsel investigated this avenue of mitigation she could have presented witnesses that would have testified to Owen's history of substance abuse and thereby influenced the jury in favor of a life recommendation. The postconviction trial court found that Owen failed to satisfy the prejudice prong of Strickland because evidence of his substance abuse likely would not change the sentence, given the weighty aggravation and substantial *552 mitigation found by the sentencing judge. We agree that Owen has not demonstrated prejudice.
During the penalty phase, the defense called Dr. Crown, a neuropsychologist, Dr. Berlin, a psychiatrist, Dr. Sultan, a psychologist, and investigator Hillary Sheehan to testify about Owen's background and his mental health. Based on this testimony, the sentencing judge found three statutory mitigating circumstances, including both mental health statutory mitigating factors and sixteen nonstatutory mitigating circumstances.[14] The sentencing judge found that Owen "was exposed to sexual and physical violence on almost a daily basis from his infancy to his teenage years"; was sexually abused himself beginning around age nine; lived in "filthy and deplorable" conditions after his mother's death; and was sent to an orphanage that "was just as bad, or even worse" than Owen's former home. Sentencing Order at 4049-50. He concluded that Owen "had one of the more horrific childhoods that this Court has seen or heard of," id. at 4051, but ultimately found that the weighty mitigation present in this case did not outweigh the four established aggravating factors: prior violent felony (first-degree murder, attempted first-degree murder, armed burglary, and sexual battery), offense committed while engaged in commission or attempt to commit burglary, HAC, and CCP.
During the postconviction evidentiary hearing, Owen called six lay witnesses who testified to his use of drugs and alcohol as a child and adolescent. Owen also called two expert witnesses. Dr. Henry L. Dee, who testified as an expert in the area of psychology and neuropsychology, reported that Owen began to drink beer at age ten or eleven, began using marijuana, hashish, Seconals, Dexedrine, Lysergic Acid Diethylamide (LSD), psilocybin mushrooms, and peyote around age twelve to fourteen, and began using crystal methamphetamine around age nineteen. Dr. Dee opined that Owen had brain damage and that Owen's substance abuse "would certainly exacerbate" Owen's impulse control problems caused by his neuropsychological impairment and mental illness. Heidi Hammond Guerra conducted a comprehensive substance abuse evaluation of Owen and testified as an expert in the field of mental health counseling, addiction counseling, and rehabilitation counseling. She testified that Owen used drugs steadily from age nine or ten. Guerra explained that "the only period of sobriety" in Owen's adult life was when Owen briefly went into the Army.
Owen asserts that the evidence presented during the postconviction evidentiary hearing would have given the sentencing judge and the jury a more complete picture of Owen's mental health and would have resulted in more weight being given to the mental health mitigating factors found by the sentencing judge. We disagree. Only Dr. Dee's testimony touched upon Owen's mental health as it related to the Slattery murder. He opined that generally speaking, Owen's impulsivity would have been exacerbated by his substance abuse. Yet, Dr. Dee did not offer an opinion as to whether Owen's actions on the night of the offense demonstrated impulsivity, and as the postconviction *553 trial court explained, the facts of Owen's calculated murder of Karen Slattery largely refuted the theory that Owen acted impulsively at the time of the crime. Given the deliberate manner in which Owen twice entered the home in which Karen Slattery was babysitting before attacking her, it seems unlikely that Dr. Dee's testimony about how Owen's substance abuse would have exacerbated his impulsivity would change the trial judge or jury's evaluation of Owen's mitigation. Our confidence in the death sentence is not undermined by counsel's failure to present evidence of Owen's history of substance abuse.

2. Admission of Statement Regarding Sexual Battery
Owen argues that the trial court erred in denying his claim that counsel was ineffective for allowing the jury to learn that Owen committed an uncharged sexual battery and to hear Owen's irrelevant and prejudicial statements about that sexual battery. The State called Captain Kevin McCoy of the Boca Raton Police Department to testify during the penalty phase about his investigation of three prior felonies committed by Owen, including the attempted murder of Marilee Manley. During cross-examination, defense counsel twice asked Captain McCoy if Owen had confessed to having sex with Manley, and McCoy answered in the affirmative. On redirect examination, the State asked the trial court for permission to introduce a statement Owen had made to Captain McCoy about the Manley sexual battery. Over defense objection, the trial judge allowed Captain McCoy to read the following lines transcribed from a video recording of Owen's confession:
Answer by Mr. Owen: Yeah. So I opened up all the drawers, couldn't still find nothing. All I had was just that ring. So she was still knocked out, so at that point I figured, well, hell, man, I might as well just go over there and take advantage of her shit.
Question [by Captain McCoy]: Uh-huh.
Answer: Because she wasn't that bad looking.
Question: Right.
Answer: So I went over there and I ended up raping her, you know.
. . . .
Answer: No. I ended up taking them [the victim's pants] off then, you know, going about my work and
Question: Okay. So you raped her on the bed.
Answer: Yeah.
The postconviction trial court found that counsel acted reasonably in not objecting to this line of questioning because the details of that crime were consistent with Owen's insanity and sexual confusion defense. The trial court also found that Owen was not prejudiced by this testimony because the prior violent felony aggravator was proven by Owen's conviction for the murder of Georgianna Worden. The record supports the trial court's findings. When reviewed in context, attorney Haughwout's questions appear to have been part of a strategy to portray Owen as sexually confused due to being a victim of childhood sexual abuse. The questions revealed that the attempted murder of Manley included a sexual battery and were followed by questions highlighting the sexual aspect of other crimes committed by Owen. Counsel is not ineffective for making a strategic decision to present evidence, even when in hindsight that decision opened the door to admission of evidence that is not entirely favorable to the defendant. For example, in Dillbeck v. State, 964 So.2d 95, 105-06 (Fla. *554 2007), this Court held that counsel was not ineffective for presenting evidence about Dillbeck's mental health and model prisoner evidence despite the presentation of such mitigation opening the door to evidence of a prior stabbing, an escape attempt, and the stabbing of another inmate. The Court found reasonable counsel's belief that the jury would be more likely to recommend death if the defense introduced no mitigation at all. Id. at 106. Furthermore, Owen has not demonstrated that he was prejudiced by admission of his statements because all four aggravating factors were proven beyond a reasonable doubt, independent of Owen's statements about the Manley sexual battery, and the trial judge found both statutory mental health mitigating factors and two nonstatutory mental health mitigating factors to be established despite Owen's account of the sexual battery.

3. Cross-Examination of Dr. Sultan
Owen argues that the trial court erred in holding that counsel was not ineffective for not making a motion for mistrial after the State questioned Dr. Sultan about her work for Capital Collateral Regional Counsel (CCRC) and CCRC's mission on behalf of death-row inmates in Florida.[15] The trial court found that counsel was not ineffective because a motion for mistrial would not have been granted. We agree. "A mistrial is a device used to halt the proceedings when the error is so prejudicial and fundamental that the expenditure of further time and expense would be wasteful if not futile." Ferguson v. State, 417 So.2d 639, 641 (Fla.1982); see also Smith v. State, 866 So.2d 51 (Fla. 2004) (holding mistrial is required only when error is so prejudicial as to vitiate entire trial). The questions here do not rise to the level of prejudicial error meriting a mistrial. The jury was aware that Dr. Sultan was hired by the defense so it is difficult to see how the discussion of Dr. Sultan's employment by CCRC in other cases would significantly color the jury's assessment of her testimony in this case. Counsel is not ineffective for failing to make a motion that is without merit. See McDonald v. State, 952 So.2d 484, 497 (Fla.2006) ("We find no error in the circuit court's conclusion that trial counsel was not ineffective for failing to file a motion that would not have been granted.").

4. Penalty-Phase Closing Argument
Owen's claim that the trial court erred in denying his arguments that trial counsel was ineffective for not objecting to the prosecuting attorney's penalty-phase closing argument is without merit. Owen asserts that the prosecutor's argument impermissibly relied on facts from three prior convictions to argue that aggravating factors other than the prior violent felony factor applied to the Slattery murder. When read in context, the prosecutor's argument is not improper. The prosecutor argued that the methodical nature of Owen's other crimes and the similarities among his crimes supported an inference that his actions in the Slattery murder were part of a careful plan rather than impulsive acts motivated by an insane delusion, but ultimately, the prosecutor argued that the jury should find CCP in the Slattery case because Owen committed the Slattery murder in a cold, calculated, and premeditated manner, not because Owen committed other crimes in a cold, calculated, and premeditated manner. Moreover, *555 even if the prosecutor's argument was erroneous and reasonable counsel would have objected, Owen has not demonstrated prejudice. In his sentencing order, the sentencing judge cited to specific facts from the Slattery murder in finding that the aggravating factors that the offense was committed during the commission of a burglary, HAC, and CCP were proven beyond a reasonable doubt. On direct appeal, this Court reviewed the trial court's findings of HAC and CCP and found them appropriate. Owen III, 862 So.2d at 700-02.
Owen also argues that trial counsel should have objected to the prosecutor labeling Owen a "cunning rapist" during closing argument. Prior to his retrial for the Slattery murder, Owen was convicted of sexual battery. Owen v. State, 596 So.2d 985, 986 (Fla.1992) (affirming conviction of murder, sexual battery, and burglary in Worden case). This conviction was entered into evidence during the penalty phase. The State likewise presented evidence that the murder and sexual battery of Karen Slattery was deliberate and planned. Prosecutors are permitted to argue logical conclusions that can be drawn from the evidence presented at trial. See Franqui v. State, 804 So.2d 1185, 1195 (Fla.2001). We do not find a basis upon which to grant postconviction relief because counsel did not object to the State's closing argument. See Darling, 966 So.2d at 383.

D. Ineffective Assistance of Counsel During Guilt Phase

1. Voluntary Intoxication Defense
Owen argues that the trial court erred in denying his claim that trial counsel was ineffective for failing to raise a voluntary intoxication defense.[16] The trial court found that Owen did not demonstrate deficiency because Owen did not present any evidence that he was intoxicated at the time of the offense, and the evidence at trial demonstrated that Owen knew what he was doing the night of the murder. Competent, substantial evidence supports the trial court's conclusion that a voluntary intoxication defense was not viable. Owen failed to present any evidence during the postconviction hearing that he was intoxicated at the time of the crime or that his history of substance use would have negated his ability to form specific intent. When asked if the murder of Karen Slattery demonstrated "impulsivity" caused by brain damage and exacerbated by Owen's substance use, Dr. Dee responded that he had not "looked at [the crime] in that regard." Ms. Guerra likewise stated that she had no opinion on Owen's state of intoxication at the time of the Slattery murder. Further, none of the lay witnesses testified to drug or alcohol use around the time of the Slattery murder. They all testified about Owen's substance use as a child and as a teenager, not about his behavior in March of 1984. Even if Owen had presented evidence that he was intoxicated on the night of the murder, the deliberate, careful nature of the crime and his detailed confession contradict a claim that he was too intoxicated to form specific intent.
The trial court's conclusion that counsel was not deficient for overlooking a viable defense is consistent with our prior decisions. For example, in Henry v. State, 862 So.2d 679, 682-83 (Fla.2003), this Court held that counsel was not ineffective for failing to present evidence that Henry *556 abused "crack cocaine before the murder, which exacerbated his underlying psychotic mental condition" because Henry presented no evidence that he was intoxicated at the time of the crime. The Court explained that under those circumstances, Henry's proposed defense theory was either an unsupported voluntary intoxication defense or an inadmissible diminished capacity defense. Id.; see also Pietri v. State, 885 So.2d 245, 252-54 (Fla.2004) (holding that counsel was not ineffective for failing to present evidence of prior drug abuse resulting in metabolic intoxication because evidence was inadmissible diminished capacity evidence); Stewart v. State, 801 So.2d 59, 65 (Fla.2001) (holding that counsel was not ineffective for failing to present voluntary intoxication defense where counsel determined that defense would be inappropriate given defendant's detailed account of crime).

2. Insanity Defense
In addition, Owen argued that his counsel was ineffective for failing to introduce evidence of his substance abuse because such evidence would support the theory that Owen was insane at the time of the offense. We find this argument to be without merit because counsel cannot be deemed ineffective for failing to present inadmissible evidence. Pietri, 885 So.2d at 252. As discussed above, to be relevant to an insanity defense, expert testimony on a defendant's mental statement must concern whether the defendant (1) was incapable of distinguishing right from wrong (2) as a result of a mental infirmity, disease, or defect. Hall, 568 So.2d at 885. Dr. Dee and Guerra would not have been permitted to testify as expert witnesses regarding Owen's sanity because, even if they were qualified to form such an opinion, they did not offer an opinion about Owen's ability to distinguish right from wrong a the time of the crime. As for Owen's lay witnesses, lay witnesses called in support of an insanity defense are not limited to testifying strictly about the legal definition of insanity. For example, in Hansen v. State, 585 So.2d 1056, 1058 (Fla. 1st DCA 1991), the First District Court of Appeal held that the trial court did not abuse its discretion in allowing lay witnesses to testify if they "observed anything" about the defendant that indicated that he was suffering from a mental disease or condition. Nevertheless, the court's discretion in admitting lay testimony is not unlimited. In Garron v. State, 528 So.2d 353, 357 (Fla.1988), this Court explained that to be admissible,
[a] lay witness, testifying on his or her personal observation as to a defendant's sanity, must have gained this personal knowledge in a time period reasonably proximate to the events giving rise to the prosecution.... A nonexpert is not competent to give lay opinion testimony based on his personal observation that took place a day removed from the events giving rise to the prosecution. This is clearly the domain of experts in the field of psychiatry.
Of the lay witnesses called at Owen's postconviction hearing, none testified to having observed Owen more recently than 1982. These witnesses could not offer opinions about whether Owen demonstrated symptoms of mental illness in close proximity to the Slattery murder, which occurred in March 1984. Their testimony would not be admissible as lay witness testimony about Owen's mental condition.

E. Cumulative Error
Owen argues that he is entitled to a new trial or at least a new postconviction proceeding because the errors during trial and postconviction, including the trial court's decision to deny an evidentiary hearing on several claims, have denied Owen his constitutional right to a fair trial. Owen's cumulative error claim is without *557 merit because Owen has not shown that any harmful error occurred. See Johnson v. Singletary, 695 So.2d 263, 267 (Fla. 1996) ("[B]ecause all issues which were not barred were meritless, we can find no cumulative error.").

III. PETITION FOR WRIT OF HABEAS CORPUS
In his petition, Owen raises several claims of ineffective assistance of appellate counsel. Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of appellate counsel, this Court must determine whether the alleged omissions are serious errors falling measurably outside of the range of professionally acceptable performance and whether the errors prejudiced the defendant. Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). Appellate counsel cannot be deemed ineffective for failing to raise an issue that in all probability would be found to be without merit. Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000).

A. Cross-Examination of Dr. Berlin
In his first habeas claim, Owen asserts that his appellate counsel should have challenged on direct appeal whether the trial court erred in permitting the State to cross-examine Dr. Berlin, a defense expert, as to his view on the death penalty during the guilt phase. We find that even if the trial court erred in allowing the State to question Dr. Berlin regarding his personal beliefs on the death penalty, any error was harmless. In Power v. State, 605 So.2d 856, 863 (Fla.1992), the Court held that any error in limiting the defendant's attempt to rehabilitate a defense expert witness who was questioned about his personal bias against the death penalty was harmless because the impeaching evidence did not damage the expert's testimony that was confined to the defendant's lack of future dangerousness and only marginally relevant to other issues. Here too, the State's questioning was not damaging to Dr. Berlin's testimony about Owen's sanity. Dr. Berlin's answer did not indicate that he held so strong of a viewpoint on the death penalty as to be actually biased. Dr. Berlin handled the question professionally, and the prosecutor did not dwell on the issue. Moreover, three other mental health experts testified at the guilt phase about Owen's sanity. Upon reviewing the record, it seems unlikely that knowledge of Dr. Berlin's view on the death penalty improperly influenced the jury's deliberation about Owen's defense. The issue would have been found to be without merit on direct appeal.

B. Prior Violent Felony Aggravating Factor
In his second habeas claim, Owen argues that his appellate counsel was ineffective for failing to argue on direct appeal that the trial judge erred by denying Owen's request to stipulate that he confessed to the prior violent felonies; allowing evidence of the prior felonies to become the feature of the penalty phase; allowing Captain McCoy to testify as to hearsay statements made by a Dr. Davis relating to injuries suffered by two of Owen's prior victims, Ms. Manley and Ms. Simpson; and allowing Captain McCoy to testify as to hearsay statements made by John Ettinger relating to the Worden murder. We find that appellate counsel was not ineffective for failing to raise these three issues on direct appeal because the issues in all probability would have been found to be without merit.
First, the trial court did not err in denying Owen's motion to exclude details of the prior violent felonies. This Court rejected a similar argument in Cox v. *558 State, 819 So.2d 705, 716 (Fla.2002), where the Court found that "the holdings of Old Chief [v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997),] and Brown [v. State, 719 So.2d 882 (Fla.1998),] are not properly analogized to this capital sentencing proceeding, where `the point at issue' is much more than just the defendant's `legal status.'"
Second, the trial court did not err in allowing the State to present evidence of Owen's three prior violent felonies through Captain McCoy, who investigated the prior felonies. Through Captain McCoy, the State entered into evidence the judgment and sentence for the noncapital felonies, the judgment for the capital felony, and videotaped conversations between Owen and Captain McCoy relating to the crimes. The videotapes ran for approximately one hour and ten minutes and were edited to avoid discussion of uncharged crimes. Evidence concerning the circumstances of a prior violent felony conviction is admissible in a capital sentencing proceeding. Finney v. State, 660 So.2d 674, 683 (Fla.1995). "In determining whether a trial court has abused its discretion in admitting evidence of prior violent felony convictions, this Court looks at the tenor of the witnesses' testimony and whether this testimony became a central feature of the penalty phase." Franklin v. State, 965 So.2d 79, 96 (Fla.2007). In Franklin, the Court found that the evidence relating to the prior felonies could not "be deemed the central feature of the penalty phase" because the State "presented testimony and evidence to establish each of the aggravating circumstances, including the testimony of Franklin's parole supervisor to establish that the murder was committed while Franklin was under imprisonment and the testimony of codefendant McCoy to establish that the murder was CCP and committed for pecuniary gain." 965 So.2d at 96-97. In the instant case, Captain McCoy's testimony, including the playing of the videotapes, took less than one day of the two-and-a-half-day penalty phase. In addition to Captain McCoy, the State called a medical examiner to testify regarding the HAC aggravating factor and two mental health experts to rebut the defense's mitigation case. Had this issue been raised on direct appeal, we would have found that the evidence relating to the prior violent felonies was not impermissibly made the central feature of the penalty phase because the State's penalty-phase presentation was comparatively brief, addressed all relevant aggravating and mitigating circumstances, and was not unduly inflammatory.
Third, Owen was not deprived of a fair opportunity to rebut hearsay testimony during his penalty phase. Hearsay testimony is ordinarily admissible during the penalty phase of a trial, provided the defendant has a fair opportunity to rebut any hearsay testimony. Rodriguez v. State, 753 So.2d 29, 44 (Fla.2000). Review of the trial record reveals that contrary to Owen's petition, no out-of-court statements made by John Ettinger were introduced through Captain McCoy. Two brief statements about injuries suffered by Ms. Manley and Ms. Simpson, one made by a Dr. Davis, were admitted. However, Owen had a fair opportunity to rebut these statements. This case is similar to Evans v. State, 838 So.2d 1090, 1097 (Fla.2002), where this Court rejected Evans' argument that he was not afforded a fair opportunity to rebut the hearsay contained in presentence investigation reports concerning his prior conviction because he could not cross-examine the person who prepared the reports. We found no error because the "transcripts of the prior trials were available to rebut any inaccuracies in the reports." Id. Like Evans, Owen could *559 have used the transcripts of his prior trials to rebut the statements about the injuries suffered by Manley and Simpson. Moreover, Owen argues that "the prosecutor could have readily called these witnesses," but he does not explain why he could not have called the declarants to rebut the hearsay statements. As explained in Bowles v. State, 804 So.2d 1173, 1184 (Fla. 2001), when a defendant challenges the admission of hearsay testimony during a penalty phase, this Court examines whether the defendant had the opportunity to rebut the hearsaythat the defendant "did not or could not rebut this testimony does not make it inadmissible." Finally, even if admission of the hearsay was error, such error was harmless because the prior violent felony aggravating factor was unambiguously established by the admission of three convictions and Owen's taped confessions to those crimes. See id. (holding any error in admitting hearsay was harmless where certified copy of prior conviction conclusively established prior violent felony aggravating factor and five aggravating factors overwhelmingly outweighed mitigating factors).
Also in his second habeas claim, Owen argues that his appellate counsel was ineffective for not challenging on appeal the denial of Owen's motion to exclude evidence of his conviction of attempted first-degree murder of Marilee Manley. Owen argues that the conviction should have been excluded because the Manley jury was instructed both on the theory of attempted premeditated murder and attempted felony murder. We find that Owen's argument is without merit.
In State v. Gray, 654 So.2d 552 (Fla. 1995), this Court held that there is no criminal offense of attempted felony murder. In Valentine v. State, 688 So.2d 313, 317 (Fla.1996), this Court held that a conviction for attempted first-degree murder must be reversed where the jury was instructed on attempted first-degree felony murder and attempted first-degree premeditated murder, and the verdict fails to state on which ground the jury relied. While acknowledging that this Court held that Gray was not retroactive in State v. Woodley, 695 So.2d 297 (Fla.1997), Owen's motion argued that the Manley conviction should not have been introduced as an aggravating factor because the crime of attempted felony murder no longer existed at the time of Owen's 1999 sentencing in the Slattery case. This argument is without merit. In order to state a claim under Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), in which the Supreme Court held that the state court erred in concluding that the reversal of a conviction used as an aggravating circumstance did not affect the validity of the death sentence, a defendant must show that the conviction on which the prior violent felony aggravator is based has been reversed. Phillips v. State, 894 So.2d 28, 36 (Fla.2004). Owen concedes that his conviction for attempted first-degree murder of Manley has not been reversed. Thus, the trial court did not err in denying Owen's motion to exclude the conviction, and appellate counsel was not ineffective for not raising the issue on appeal.

C. Sentencing on Noncapital Convictions
In his third habeas issue, Owen argues that he is entitled to resentencing on his sexual battery and burglary convictions because he was not given the option of whether to be sentenced under Florida's 1983 sentencing guidelines. See Smith v. State, 537 So.2d 982, 987 (Fla.1989) (holding that defendant whose crime was committed before July 1, 1984, but sentenced thereafter may affirmatively select to be sentenced under the 1983 guidelines). Owen's argument is refuted by the record because Owen, through his counsel, elected *560 to be sentenced under the 1983 guidelines. On February 25, 1999, over a decade after this Court's decision in Smith established the right to choose whether to be sentenced under the guidelines, defense counsel filed a motion titled "Motion to be Sentenced on Non-Capital Felonies." The motion stated that Owen "has been found guilty by the jury of burglary while armed and attempted sexual battery with a deadly weapon" and that "sentencing for these convictions is governed by the sentencing guidelines." Trial counsel asked the trial judge to sentence Owen to lengthy, consecutive guideline sentences on these noncapital offenses prior to the penalty phase so that Owen's unlikelihood of parole could be argued as a mitigating factor. After the motion was denied, defense counsel proffered the testimony of Thomas Gano, a criminal attorney, who testified that the guidelines called for a mandatory life term for Owen's noncapital crimes. This motion and proffer constitute an election to be sentenced under the guidelines, refuting Owen's request for relief.

IV. CONCLUSION
For the reasons stated above, we affirm the circuit court order denying Owen's motion for postconviction relief and deny Owen's petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The trial judge found four aggravating factors: (1) Owen had been previously convicted of another capital offense or a felony involving the use of violence to some person; (2) the crime was committed while Owen was engaged in the commission of or an attempt to commit or flight after committing or attempting to commit the crime of burglary; (3) the crime was especially heinous, atrocious, or cruel (HAC); and (4) the crime was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP).
[2] The trial judge found three statutory mitigating factors: (1) the crime was committed while Owen was under the influence of extreme mental or emotional disturbance; (2) Owen's capacity to conform his conduct to the requirements of the law was substantially impaired; and (3) Owen's age at the time of the crime was twenty-three.
[3] The sixteen nonstatutory mitigating factors were: (1) Owen was raised by alcoholic parents; (2) he was raised in an environment of sexual and physical violence; (3) he was a victim of physical and sexual violence; (4) he was abandoned by the deaths of his parents and abandoned by other family members; (5) he has a mental disturbance, and his ability to conform his conduct to the requirements of law was impaired; (6) he was cooperative in court and not disruptive during court proceedings; (7) he adjusted well to incarceration and will be a good prisoner; (8) the offense happened fifteen years ago; (9) Owen will never be released from prison if given a life sentence; (10) he cooperated with law enforcement officers; (11) he obtained a high school equivalency diploma; (12) he received a general discharge under honorable conditions from the United States Army; (13) he saved a life in his youth; (14) he suffered from organic brain damage; (15) he lived in an abusive orphanage; and (16) other circumstances of the offense were mitigating, specifically that Owen did not harm the two young children for whom Karen Slattery was babysitting at the time of her murder.
[4] Owen's claims on appeal were: (1) the trial court erred in failing to suppress Owen's confession on the basis of voluntariness; (2) the trial court erred in failing to suppress Owen's confession because Owen made an unequivocal invocation of his right to remain silent that was ignored by the law enforcement officers; (3) the trial court improperly applied the aggravating factor of HAC; (4) the trial court improperly applied the aggravating factor of CCP; (5) the sentence of death is disproportionate; (6) Florida's death penalty statute is unconstitutional; and (7) the aggravating factor of murder in the course of a specified felony is unconstitutional.
[5] Owen's claims were: (1) Owen was denied effective assistance of counsel during the pretrial proceedings; (2) he was denied effective assistance of counsel during the jury selection; (3) he was denied effective assistance of counsel during the guilt phase of his trial; (4) Owen was denied effective assistance of counsel during the penalty phase of his trial; (5) State agencies claimed exemptions to public records law in bad faith; (6) the State violated Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), by not disclosing exculpatory or impeaching evidence, failing to correct false and misleading testimony, and by presenting false evidence, testimony, and argument; (7) Owen was denied the effective assistance of counsel during both the guilt and penalty phases of his trial because counsel failed to advise Owen regarding his right to testify; and (8) the cumulative effect of the constitutional error throughout these proceedings violated Owen's constitutional rights.
[6] Owen's claims on appeal are: (1) he was entitled to a hearing on the claims designated as requiring factual determination; (2) he proved that he was denied effective assistance of counsel during the jury selection; (3) he proved that he was denied effective assistance of counsel during the penalty phase of his trial; (4) he proved that he was denied effective assistance of counsel during the guilt phase of his trial; and (5) the cumulative effect of errors through trial violated his constitutional rights.
[7] Owen's habeas claims are: (1) appellate counsel was ineffective for failing to raise on appeal the State's improper impeachment of a defense expert during the guilt phase of Owen's trial; (2) appellate counsel was ineffective for failing to raise on appeal obvious errors from the penalty phase of Owen's trial; and (3) Owen was illegally sentenced on his noncapital offenses.
[8] U.S. Const. amend. VI.
[9] Owen's allegations that counsel failed to argue this ground for suppression are also refuted by the record. In her motion to suppress, retrial counsel Carey Haughwout argued that law enforcement officers intentionally withheld filing charges in the Slattery investigation in order to circumvent Owen's right to counsel. At the motion hearing, she argued that the questioning of Owen about the Slattery murder was a violation of his right to counsel because the case was "so intertwined with the cases for which his Sixth Amendment right to counsel had attached."
[10] Owen also argues that the trial court erred in summarily denying his claim that trial counsel was ineffective for failing to call mental health experts during the suppression hearing. Owen asserts that such experts would have supported the argument that Owen did not confess voluntarily. The trial court correctly denied this sub-claim without an evidentiary hearing because Owen's allegations are legally insufficient. Owen does not allege what a mental health expert would have testified about regarding Owen's mental state during the police interrogation. Thus, Owen's claim is legally insufficient. See Booker v. State, 969 So.2d 186, 196 (Fla.2007) (holding rule 3.851 ineffective assistance of counsel claim was "still insufficiently pled" after amendment adding names of witnesses who allegedly should have been called because Booker "made equivocal statements about the substance of the witnesses' testimony"); LeCroy v. Dugger, 727 So.2d 236, 239-40 (Fla. 1998) (affirming summary denial of ineffective assistance of counsel claim where defendant made conclusory allegations and failed to plead "specific facts which would warrant an evidentiary hearing").
[11] In Florida, the legal test for insanity in criminal cases is the "M'Naghten rule," derived from the English decision M'Naghten's Case, 8 Eng. Rep. 718 (1843). See Patton v. State, 878 So.2d 368, 374-75 (Fla.2004).
[12] On a related note, Owen argues that trial counsel was ineffective for not objecting when the trial court informed juror Griffin that the trial would not involve more than one alleged victim. Owen argues that while technically correct, this statement was misleading because the State would be presenting evidence of a second homicide as part of its penalty-phase presentation. Owen argues that the statement was prejudicial because juror Griffin stated a belief that the death penalty should be automatic where a perpetrator has killed more than one victim. We find that trial counsel did not act "outside the broad range of reasonably competent performance under prevailing professional standards" by not objecting to the comment. Melton v. State, 949 So.2d 994, 1001 (Fla.2006) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla. 1986)). Trial counsel responded to the potentially misleading statement by questioning juror Griffin about her belief that the death penalty should be automatic where a defendant has killed more than one person. Counsel's decision to question juror Griffin about her views rather than challenging the trial judge's comment in front of a potential juror was reasonable.
[13] Also in this portion of this appeal, Owen argues that scrivener's errors in the jury selection transcript have interfered with his ability to appeal. Owen is correct that speakers, including the particular jurors Owen asserts should not have served on his jury, are misnamed on numerous occasions in the transcript. However, Owen is not entitled to relief at this stage. This issue is procedurally barred, as it could have been raised on direct appeal. See Whitfield v. State, 923 So.2d 375 (Fla.2005) (holding claim based on Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), procedurally barred because it could have been raised on direct appeal).
[14] The sentencing judge gave "considerable weight" to the factor that Owen was under the influence of extreme mental or emotional disturbance at the time of the crime; "some weight" to the factor that Owen's capacity to conform his conduct to the requirements of law was substantially impaired; "some weight" to the nonstatutory factor that Owen had a mental disturbance; and "some weight" to the nonstatutory factor that Owen suffered from brain damage. Sentencing Order at 4056-59.
[15] Owen's argument that his counsel was ineffective for not objecting to the questioning because it constituted a comment on Owen's right to counsel and a violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), is without merit because trial counsel did object on other grounds and the trial court sustained the objections.
[16] Voluntary intoxication was a recognized defense at the time of Owen's offense. See § 775.051, Fla. Stat. (2007) (abolishing voluntary intoxication defense effective October 1, 1999).